LAW OFFICES OF JONATHAN G. STEIN
JONATHAN G. STEIN  SBN 224609
5050 LAGUNA BLVD STE 112-325
ELK GROVE CA 95758
(916) 247-6868; (FAX) 443-5022
e-mail jonathan@jonathangstein.com

LAW OFFICES OF MARGARET BROSSARD
MARGARET BROUSSARD  SBN 219251
7909 WALERGA RD STE112 PMB 1157
ANTELOPE CA 95843
(916) 722-2370; (FAX) 880-5252
e-mail  pegthelawyer@aol.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARRANCE CHAMPLAIE | CASE NO.  2:2009-cv-01316-LKK-DAD |
|        Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS BAC HOME LOAN SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING LP, COUNTRYWIDE HOME LOANS, INC. d/b/a AMERICA'S WHOLESALE LENDER, RECONTRUST COMPANY, N.A., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'s MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** |
| v. | |
| BAC HOME LOANS SERVICING, LP, F/K/A COUNTRYWIDE HOME LOANS SERVICING; COUNTYWIDE HOME LOANS, INC,. DBA AMERICA'S WHOLESALE LENDER; RECONTRUST CO; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RON ALLEN & ASSOCIATES REAL ESTATE; RONNIE D ALLEN; and DOES 1-20 inclusive, | |
|        Defendants. | DATE:     September 28, 2009<br>TIME:     10:00 a.m.<br>CTRM:   4, 15th Floor |

Plaintiff TARRANCE CHAMPLAIE ("Plaintiff") respectfully submits the following

Memorandum of Points and Authorities in Opposition to Defendants BAC HOME LOAN

SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING LP ("BAC"),

COUNTRYWIDE HOME LOANS, INC. d/b/a AMERICA'S WHOLESALE LENDER ("CHL"),

RECONTRUST COMPANY, N.A. ("Recontrust"), and MORTGAGE ELECTRONIC

1   REGISTRATION SYSTEMS, INC.'s ("MERS") (collectively "Moving Defendants") Motion to

2   Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") and Motion to Strike.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1  LAW OFFICES OF JONATHAN G. STEIN
   JONATHAN G. STEIN  SBN 224609
2  5050 LAGUNA BLVD STE 112-325
   ELK GROVE CA 95758
3  (916) 247-6868; (FAX) 443-5022
   e-mail jonathan@jonathangstein.com
4
   LAW OFFICES OF MARGARET BROSSARD
5  MARGARET BROUSSARD  SBN 219251
   7909 WALERGA RD STE112 PMB 1157
6  ANTELOPE CA 95843
   (916) 722-2370; (FAX) 880-5252
7  e-mail pegthelawyer@aol.com

8  Attorney for Plaintiff

9              UNITED STATES DISTRICT COURT

10           EASTERN DISTRICT OF CALIFORNIA

11

12 TARRANCE CHAMPLAIE,                    CASE NO.  2:2009-cv-01316-LKK-DAD

13           Plaintiff,                   **PLAINTIFF'S OPPOSITION TO
                                          DEFENDANTS BAC HOME LOAN
                                          SERVICING, LP f/k/a COUNTRYWIDE
14 v.                                     HOME LOANS SERVICING LP,
                                          COUNTRYWIDE HOME LOANS, INC.
15 BAC HOME LOANS SERVICING, LP,          d/b/a AMERICA'S WHOLESALE
   F/K/A COUNTRYWIDE HOME LOANS           LENDER, RECONTRUST COMPANY,
16 SERVICING; COUNTYWIDE HOME             N.A., AND MORTGAGE ELECTRONIC
   LOANS, INC,. DBA AMERICA'S             REGISTRATION SYSTEMS, INC.'s
17 WHOLESALE LENDER; RECONTRUST           MOTION TO DISMISS FIRST AMENDED
   CO; MORTGAGE ELECTRONIC                COMPLAINT AND MOTION TO STRIKE;
18 REGISTRATION SYSTEMS, INC.; RON        MEMORANDUM OF POINTS AND
   ALLEN & ASSOCIATES REAL ESTATE;        AUTHORITIES IN SUPPORT THEREOF**
19 RONNIE D ALLEN; and DOES 1-20
   inclusive,                             DATE:        September 28, 2009
20                                        TIME:        10:00 a.m.
             Defendants.                  CTRM:        4, 15th Floor
21 _____/

22        Plaintiff TARRANCE CHAMPLAIE ("Plaintiff") respectfully submits the following

23 Memorandum of Points and Authorities in Opposition to Defendants BAC HOME LOAN

24 SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING LP ("BAC"),

25 COUNTRYWIDE HOME LOANS, INC. d/b/a AMERICA'S WHOLESALE LENDER ("CHL"),

26 RECONTRUST COMPANY, N.A. ("Recontrust"), and MORTGAGE ELECTRONIC

27 REGISTRATION SYSTEMS, INC.'s ("MERS") (collectively "Moving Defendants") Motion to

28 Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") and Motion to Strike.

# MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              1. Dismissal Is Inappropriate Under Rule 12(b)(6) . . . . . . . . . . . . . . . . . 8

        B.    Specific Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

              1. First Cause of Action for Violation of TILA is Sufficient to State a Cause
                 of Action Against Defendants CHL and CB . . . . . . . . . . . . . . . . . . . . 10

              2. Second Cause of Action for Violation of Rosenthal Act is Sufficient to
                 State a Cause Of Action Against Defendants CHL, MERS, CB, and
                 CFC  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

              3. Plaintiff has Sufficiently Stated the Third Cause of Action for Negligence
                 Against Defendants CHL, MERS, CB, and CFC . . . . . . . . . . . . . . . . 15

              4. Fourth Cause of Action for Violation of RESPA is Sufficient to State a
                 Cause of Action Against Defendants CHL and CB . . . . . . . . . . . . . . 18

              5. Fifth Cause of Action for Breach of Fiduciary Duty is Sufficient to State
                 a Cause of Action Against Defendant CB   . . . . . . . . . . . . . . . . . . . . 20

              6. Sixth Cause of Action for Fraud is Sufficient to State a Cause of Action
                 Against Defendants CHL, MERS, CB, and CFC . . . . . . . . . . . . . . . . 21

              7. Seventh Cause of Action for Unfair Business Practices is Sufficient to State
                 a Cause of Action Against Defendants CHL, MERS, CB, and CFC   .  24

              8. Plaintiff has Sufficiently Stated the Eighth Cause of Action for Breach of
                 Contract Against Defendant CB  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

              9. Ninth Cause of Action for Breach of Implied Covenant of Good Faith and
                 Fair Dealing is Sufficient to State a Cause of Action Against Defendants
                 CHL, MERS, CB, and CFC  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

              10. Tenth Cause of Action for Wrongful Foreclosure is Sufficient to State a
                 Cause of Action Against Defendant CHL . . . . . . . . . . . . . . . . . . . . . 29

        C.    Defendants' Motion to Strike Must Be Denied Because Plaintiff Has Alleged
              Sufficient Facts to Warrant Recovery of Punitive Damages and Attorneys'
              Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

## I.   CASES

Armstrong Petroleum Corp. v. Tri-valley Oil and Gas Company, 116 Cal App 4th 1375, 1390 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005)  . . . . . . . . . . . . . . . . . . .  23

Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir. 1990) . . . . . . . . . . . . . . . .  5

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . .  3, 6

Black v. Sullivan, 48 Cal. App. 3d 557 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 15

Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977)  . . . . . . . . . . . . . . .  17

Carma Developers, Inc. v. Marathon Dev. Cal., Inc.,  2 Cal. 4th 342, 371 (1992) . . . . . . . . . . .  22

Carpenter v. Longan, 83 U.S. 271, 274 (1872)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . .  18

Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Chicago Title Ins. Co. v. Great Western Financial Corp., 69 Cal.2d 305 (1968)  . . . . . . . . . . .  14

Conley v. Gibson, 355 U.S. 41, 47, (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Cruz v. Beto, 405 U.S. 319, 322 (1972)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Davis v. Scherer, 468 U.S. 183 (1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . .  11

Edwards v. Your Credit, Inc., 148 F.3d 427 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Giraldo v. Department of Corrections & Rehabilitation, 168 Cal. App. 4th 231(2008) . . . . . . .  9

Gottreich v. SF Inv. Corp., 552 F.2nd 866 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990)  . . .  5

Hanna v. Plumer, 380 U.S. 460, 465 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Hauger v. Gates, 42 Cal. 2d 752, 753 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122 (9th Cir. 2009) . . . . . . . . . . . . . . .  20

Holder v. Home Sav. & Loan Assn., 267 Cal. App. 2d 91, 108 (1968)  . . . . . . . . . . . . . .  5, 12, 14

Holland v. Pendleton Mtge. Co., 61 Cal. App. 2d 570, 578 (1943)  . . . . . . . . . . . . . . . . . . . . . .  9

Homestead Savings v. Darmiento, 230 Cal. App. 3d 424, 436 (1991) . . . . . . . . . . . . . . . . . . . .  22

In re Equity Funding Corp. of Am. Sec. Litig., 416 F.Supp. 161, 181 (C.D. Cal. 1976)  . . . . . .  18

_In re_ Hawkins, No. BK-S-07-13593, 2009 Bankr. LEXIS 877 (Bankr. D. Nev. Mar. 31, 2009) 3, 6

_In re_ Vargas, 396 B.R. 511(Bankr. C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Munger v. Moore, 11 Cal. App. 3d 1 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Nelson v. Department of Real Estate, 161 Cal. App. 3d 939 (1984). . . . . . . . . . . . . . . . . . . . 20

Rivadell, Inc. v. Razo, 215 Cal. App. 2d 614, 625 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1007 (9th Cir. 2008.) . . . . . . . . . . . . . . . . . 19,20

Cisco v. Van Lew, 60 Cal. App. 2d 575, 583-584 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Scheuer v. Rhodes, 416 U.S. 232, 236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

StreamCast Networks, Inc v. IBIS LLC, No. 05-4239, 2006 WL 5720345, at *7, 16-17 (C.D. Cal. May 2, 2006).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

Titus v. Canyon Lake Property Owners Assn., 118 Cal. App. 4th 906 (2004) . . . . . . . . . . . . . 21

Westways World Travel v. AMR Corp., 182 F Supp. 2d 952, 963 (C.D. Cal. 2001).) . . . . . . . 22

**II.      STATUTES**

**Federal Statutes**

12 U.S.C. § 2601  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

12 U.S.C. § 2605(e)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C.S. § 1635  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

15 U.S.C. §1638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# I.

## INTRODUCTION

Plaintiff in this action is a victim of a predatory lending scheme whereby he was fraudulently induced to enter into an agreement that may result in the loss of his home. Accordingly, Plaintiff respectfully requests, for the following reasons, that Defendants BAC, CHL, Recontrust, and MERS' Motion to Dismiss and Motion to Strike be denied in their entirety or, in the alternative, that Plaintiff be given leave to amend his First Amended Complaint.

# II.

## FACTUAL BACKGROUND

Beginning in 1990's, lenders developed a scheme to rapidly infuse capital into the home mortgage lending system by selling mortgages on the secondary market.  The loans were "packaged" and sold, normally three to five times, to create a bankruptcy remote transaction. The financial entities then pooled the loans into large trusts, securitized the pool and sold these securities on Wall Street as mortgage backed securities, bonds, derivatives and insurances. Often, this was done at twenty (20) or thirty (30) times the original mortgage, turning a billion dollars in loans into twenty or thirty billion in profit for the lenders. (See, First Amended Complaint ("FAC") ¶ 18.)

As profits soared, so did the lender's greed and arrogance.  Following the legal requirements of having written assignments, notices, and consents between the various parties, was cast aside as too expensive and too time consuming.  (FAC ¶ 19.)  The notes, instead of being properly assigned and delivered, were either shredded or boxed and warehoused. Occasionally, the notes were delivered directly to the servicer but not to the purchasing party, the real party in interest.

Further, as this process became more and more profitable, the underwriting requirements were repeatedly reduced to trap more and more unsuspecting borrowers.  As the lenders reduced the underwriting requirements, they introduced the concept of "churning" loans, a calculated plan to repeatedly refinance borrowers loans, taking as much equity as possible, and artificially driving up housing prices.  (FAC ¶ 21.)  At the same time, the numbers of transactions necessitated the hiring of greater numbers of less and less qualified people who received minimal training, if any at all.  This scheme has resulted in catastrophic effects to the market and the

average homeowners, Plaintiff included.

In or about April 2007, Jake Weathers approached Plaintiff, telling him that he was the loan officer for Defendant Ron Allen & Associates Real Estate, and solicited him to finance his residence located at 4638 Medina Way, North Highlands, California ("Property").  (FAC ¶¶ 7, 23.)  Mr. Weathers advised the Plaintiff that he could get him the "best deal" and the "best interest rates" available on the market.  (FAC ¶ 25.)

Mr. Weathers further told Plaintiff that the payments for the loan would be approximately $1,600.00 per month.  In fact, the payment turned out to be over $2,600.00 per month and has now increased to $2,900.00 per month.  (FAC ¶ 26.)  (See, Plaintiff's Request for Judicial Notice in Support of Opposition ("RFJN"), Exhibit 1.)  Mr. Weathers further advised Plaintiff that if the loan ever became unaffordable, he would simply refinance it into an affordable loan.  This assurance helped to induce Plaintiff to finance his Property.  (FAC ¶ 28.)

Plaintiff was not given a copy of any of the loan documents prior to closing as required. At closing, Plaintiff was not allowed to review the documents and was told by Mr. Weathers simply to sign and initial at various locations.  Mr. Weathers falsified the loan application, inflating Plaintiff's actual income and creating employment for Plaintiff that did not exist.  (FAC ¶ 27.)  Further, Plaintiff did not receive the required copies of a proper notice of cancellation. (FAC ¶ 29.)  Plaintiff has alleged that the facts surrounding this loan transaction were purposefully hidden to prevent Plaintiff from discovering the true nature of the documents.  Facts surrounding this transaction continue to be hidden from Plaintiff to this day.  (FAC ¶ 30.)

On or about August 3, 2007, Plaintiff completed the loan on the Property.  The terms of the loan were memorialized in a Promissory Note which was secured by a Deed of Trust on the Property.  The Deed of Trust identified Defendant Recontrust as trustee, and Defendant CHL as Lender.  (FAC ¶ 31.)

Plaintiff's Deed of Trust also identified Defendant MERS as nominee for the Lender and Lender's successors and assigns, and the beneficiary.  (FAC ¶ 32.)  (See, Defendants' Request for Judicial Notice ("Defendants' RFJN"), Exhibit B.)  Defendant MERS was developed to be a document storage company, not a nominee or beneficiary of any of the Defendants.[1]  As a result,

---

[1]Defendant MERS was developed by the real estate finance industry to facilitate the sale and resale of instruments in the secondary mortgage market and to track registered security instruments for lenders.  (See,

4

designation of Defendant MERS as a nominee on Plaintiffs' Deeds was illegal under Defendant

MERS' corporate charter titled "Terms and Conditions", and rendered any subsequent assignments

of the Deed or substitutions of trustee by Defendant MERS invalid.  (FAC ¶¶ 9-11, 32.)[2]

On or about May 27, 2008, LandSafe Title Corporation (LandSafe), in its capacity as

attorney in fact for Defendant Recontrust, issued a Notice of Default and Election to Sell Under

Deed of Trust ("NOD").  This NOD was recorded in Office of the Recorder for Sacramento

County, California on May 29, 2008.  (FAC ¶ 43.)  (See also, Defendant's RFJN, Exhibit D.)

On or about September 5, 2008, Defendant Recontrust field a Notice of Trustee's Sale in

Office of the Recorder for Sacramento County, California.  (FAC ¶ 44.)  (See also, Defendant's

RFJN, Exhibit E.)  On October 23, 2008, Defendant Recontrust issued a Trustee's Deed Upon

---

Phyllis K. Slesinger & Daniel McLaughlin, Mortgage Electronic Registration System, 31 Idaho L. Rev. 805 (1995) (discussing the MERS model).)

[2]Our current financial crisis in the United States can be directly traced to the creation and operation of MERS system.  As the success of the mortgage securitization scheme blossomed, the lenders expanded their borrower pool into the subprime arena and began introducing toxic and predatory loans, such as those sold to the Plaintiffs herein.  It soon became evident that the system of physically transferring the notes and recording their transfers was expensive, cumbersome and inefficient for quick action.  MERS and similar recording systems were then developed by the real estate finance industry to streamline the process.  MERS is the most recognized national electronic registration and tracking system that tracks the beneficial ownership interest and servicing rights in mortgage loans.  (See, In re Hawkins, No. BK-S-07-13593, 2009 Bankr. LEXIS 877, at *3 (Bankr. D. Nev. Mar. 31, 2009); see also, In re Vargas, 396 B.R. 511(Bankr. C.D. Cal. 2008).)  Defendant MERS has advertised itself as an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked, eliminating the need to prepare and record assignments when trading residential and commercial mortgage loans. (Id.) (See, Plaintiff's RFJN, Exhibit 2.)
In reality, however, these systems served as nothing more than a shell or front for its "Members".  Their primary function was to hide these toxic and fraudulent loans from borrowers, the government and the investors in the mortgage-backed securities.  Before MERS and similar systems were created, it was impossible for mortgages, which have no market value, to be sold at a profit or collateralized and sold as mortgage-backed securities. Before these systems were invented, it would not have been possible for Defendants to conceal from government regulators the extent of financial risk entailed in origination of the predatory residential loans, and the fraudulent re-sale and securitization of those otherwise non-marketable loans.  Before these computer transfers became an integral part of the lending industry, the actual beneficiary of every deed of trust on every parcel of land in California could be readily ascertained by merely reviewing the public records.
After MERS was created, it was impossible for a borrower, their attorney, the courts, the government, or anyone else, to identify the actual beneficial owner of any particular loan or the property which was the collateral securing the loan.  In other words, post MERS and MERS like systems, from the moment the deed of trust was executed by the borrower, there was no true "beneficiary" under the deed of trust.  As a result, all subsequent assignments of any interest in the loan and deed of trust were known by the members or owners of the computer network, moving Defendants included, to be fraudulent and unlawful.  Finally, after creation of these systems, the servicing rights to these predatory loans, Plaintiffs' loan included, were rarely retained by the originator, and instead  transferred to other predatory entities.  This was done for the specific purpose of forcing the borrower to refinance the loan, taking much of the equity through high fees and prepayment penalties, or ultimately foreclose on the residence and take the borrowers home, without any right to do so.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

Sale ("Trustee's Deed") to Federal National Mortgage Association ("FannieMae"), who is also identified as the foreclosure beneficiary.  (See, Defendant's RFJN, Exhibit F.)

On or about November 10, 2008, Defendant Reconstruct rescinded the Trustee's Deed it previously issued to FannieMae based on procedural defects of the foreclosure sale.  (See, Defendants' RFJN, Exhibit G.)

On or about March 24, 2009, Defendant Reconstruct issued another Notice of Trustee's Sale, which was recorded in Office of the Recorder for Sacramento County, California.  (See, Defendants' RFJN, Exhibit H.)

On or about April 9, 2009, a Qualified Written Request under RESPA ("QWR" or "Request") was mailed to Defendant BAC.  The QWR included a demand to rescind the loan under the TILA provisions.  Defendant BAC has yet to properly respond to this Request. (FAC ¶ 33.)

Plaintiff believes that discovery will show that none of the Defendants, moving Defendants included, is a "person entitled to enforce" the security interest under the Note and the Deed of Trust as defined in California Commercial Code §§ 3301 and 3309.  Plaintiff believes that discovery will show that moving Defendants sold their home loans to other financial entities, Plaintiff's loan included, which "pooled" large numbers of loans, put them into trusts, and sold securities based on them.  Plaintiff has alleged that the none of the Defendants, including moving Defendants, own or have any rights with respect to the loan that is the subject of this action, and are not entitled to transfer, assign or enforce the security interest or the Note.  Defendants named in this litigation, moving Defendants included, are nothing more than third parties coming in and abusing the non-judicial foreclosure process.

### III.
### DISCUSSION

**A.**   **Legal Standard**

**1.**   **Dismissal Is Inappropriate Under Rule 12(b)(6)**

On a motion to dismiss, the Court should accept all the allegations as true and draw all reasonable inferences in favor of the plaintiff.  (Scheuer v. Rhodes, 416 U.S. 232, 236, overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto 405 U.S. 319, 322 (1972).)  To survive a motion to dismiss a plaintiff need to plead "only facts to state a claim for

relief that is plausible on its face." (Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007).)  A dismissal is only appropriate where the plaintiff fails to state a claim supportable by any cognizable legal theory.  (Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir. 1990).)  A complaint must "only give the defendant fair notice of what plaintiff's claim and the grounds of which it rests".  (Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds by Bell Atlantic Corporation v. Twombly, 550 U.S. at 563.)  Any existing ambiguities must be resolved in favor of the pleading.  (Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).)

In deciding a motion to dismiss, the court must accept as true the allegations of the complaint and must construe those allegations in a light most favorable to the non-moving party. (Wyler Summit Partnership v. Turner Broadcasting Inc., 135 F. 3d 658, 661 (9th Cir. 1998).) Generally, a court may not consider any material beyond the pleading in ruling on a 12(b)(6) motion.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F. 2d 1542, 1555 n. 19 (9th Cir. 1990).)  However, where it is inclined to grant a motion to dismiss, a district court should provide leave to amend unless it is clear that a complaint could not be saved by any amendment.  (Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).)

In this case, Plaintiff has plead more than sufficient facts to allege the nature and extent of the wrongful conduct committed by each of the moving Defendants in paragraphs 17-52 of Plaintiff's FAC.  These factual allegations are thereafter incorporated by reference into each applicable Cause of Action.  Each Cause of Action identifies the elements of that particular Cause of Action and specifies which Defendant or Defendants that Cause of Action applies to. Additionally, Plaintiff has alleged that Defendants together, in a "conspiratorial nature", undertook the misdeeds herein.  This "civil conspiracy" as alleged and incorporated into all subsequent Causes of Action sufficiently provides the threshold legal and factual basis for several causes of action that at first blush may seem inappropriate for a particular Defendant.

At this point in the litigation, the Court must consider the allegation in Plaintiff's FAC as true, without requiring the Plaintiff to prove his case.  The federal notice pleading requires Plaintiff only to allege enough facts to place the Defendants on notice of the cause of action, general facts, elements and damages claimed.  Proof of the specific and detailed wrongdoing, of which each of the Defendants are most culpable and responsible for, is reserved for the later stage of the litigation

due to the simple reason that such proof can only be obtained through discovery.  The overview to this "shell" game is that all who participated in this "get rich quick" scheme, cannot now claim that they are somehow an innocent, unrelated third party.

**B.    Specific Causes of Action**

**1.    First Cause of Action for Violation of Truth In Lending Act, 15 U.S.C. § 1601 et seq., is Sufficient to State a Cause of Action Against Defendant CHL**

**a.    TILA Disclosure Violations Are Pled Sufficiently**

The federal Truth in Lending Act ("TILA") is one of the most significant federal consumer protection laws.  Congress intended that TILA's protections be enforced by consumers acting as private attorneys general.  (See, Edwards v. Your Credit, Inc., 148 F.3d 427, (5th Cir. 1998); McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir. 1978).)  TILA requires a "creditor" to disclose credit terms -- for example, the annual interest rate -- to a borrowing consumer.  (See, 15 U.S.C. §1638.)  Supplementary duties are imposed on a creditor when a security interest is retained or acquired, as part of a credit transaction, in any real property "which is used or expected to be used as the residence" of the borrower.  (15 U.S.C. § 1635(a).)

Citing to Marks v. Chicoine, 2007 WL 160992 (N.D. Cal. Jan. 18, 2007), Defendant CHL seems to argue that Plaintiff did not plead his TILA Cause of Action with appropriate specificity. As an initial matter, Federal Rule of Civil Procedure 8 only requires Plaintiff to give Defendant CHL notice of the claims alleged against it.  Further, Marks case does not stand for the proposition that the "plaintiff must specifically plead the details of his loan and of the disclosures accompanying it that he believes were improperly given, and allege how they are improper."  (Motion to Dismiss, 7:1-5.)  Rather, the Marks court dismissed the TILA cause of action with leave to amend because the plaintiff in that case did not allege how defendant violated the various statutes and regulations, and further directed plaintiff to comply with Rule 8(a).  (See, Marks, 2007 WL 160992 at * 7.)

Here, Plaintiff has clearly enumerated the TILA disclosures requirements that Defendant CHL violated in the course of the mortgage transaction involved herein.  Plaintiff pled that

Defendant CHL failed to provide disclosure of the annual rate of Plaintiff's loan, by failing to

correctly and accurately comply with the disclosure requirements in writing, and failing to disclose

all finance charge details and the annual percentage rate based upon properly calculated and

disclosed finance charges and amount financed.  (FAC ¶ 62.)  The latter allegations are further

supported by Exhibits A and C of Defendants' RFJN.  Plaintiff's Note states that the loan sold to

him was a 30-year fixed rate loan in the amount of $256,500.00, with a monthly payment of

$1,859.00.  (See, Defendants' RFJN, Exhibit A.)  The TILA Disclosure Statement, on the other

hand, identifies the amount financed as $254,856.96, and states that Plaintiff's monthly payments

will be adjusting on June 1, 2020 and again on August 1, 2037.  (See, FAC ¶ C.)  A fixed rate loan

does not carry adjustable monthly payments.  As such, the TILA disclosure that Defendant CHL

provided the Plaintiff in this case was defective and non-compliant with the statutory TILA

requirements.  Thus,  Plaintiff has sufficiently pled the TILA claim against Defendant CHL.

### b.    Plaintiff's TILA Claim for Damages Is Not Barred As a Matter of Law

Defendant CHL also argues that Plaintiff's TILA damages claim is barred.[3]  It is a well-

established rule in California that the doctrine of equitable tolling suspends the statute of

limitations until borrowers discovered or had reasonable opportunity to discover the fraud or the

non-disclosures that form the basis of a TILA action.  (King v. California, 784 F.2d 910, 915 (9th

Cir. 1986); see also, Eubanks v. Liberty Mortgage Banking Ltd., 976 F. Supp. 171 (9th Cir. 2003)

(noting that TILA claims are subject to equitable tolling in instances of fraud).)  "The motion [to

dismiss] should be granted 'only if the assertions of the complaint, read with the required liberality,

---

[3]In support, Defendant Wachovia cites Meyer v. Ameriquest Mortgage Co., 342 F. 3d 899 (9th Cir. 2003), which is inapposite to the facts at hand.  In Meyer, the Court ruled that claimants right to rescind was cut off primarily because their house was already sold.  The Court also reasoned that because claimants were in full possession of all relevant information to discover the TILA violations at the time loan documents were signed, their claim was tolled.  (Id. at 902.)  In the instant action, Plaintiff has alleged that he was not explained what the loan documents contained, was not provided requisite disclosures , and was not permitted to review the loan documents, and was thus not in possession of relevant information to discover TILA violations.  (FAC ¶¶ 27, 29-30.)  It is important to note that the Meyer court expressly acknowledged that the older line of California authorities provides that the period of limitations commences at the time the plaintiff discovered, or should have discovered, the acts constituting the TILA violation.  (Id. at 902.)

9

would not permit the plaintiff to prove that the statute was tolled.'" (Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008), citing Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir. 1987); see also, Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006) (holding that it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss if equitable tolling is at issue, given that the applicability of equitable tolling depends on matter outside of the pleadings and Court's review is limited to the complaint).)[4]

Here, Plaintiff has pled that he was not given a copy of any of the loan documents prior to closing, and that the notary did not allow Plaintiff to review the documents or explain the documents to him. (FAC ¶ 29.)  Instead, he was told by Defendant Weathers simply to sign and initial the loan documents at various locations.  (FAC ¶ 27.)  Further, Plaintiff has pled that the facts surrounding the loan transaction were purposefully hidden and continue to be hidden from him to this day.  (FAC ¶ 30.)  The statute of limitation runs from the **actual discovery**.  (See, Katz v. Bank of California, 640 F.2d 1024, 1025 (9th Cir. 1981) citing NLRB v. Don Burgess Constr. Corp., 596 F.2d 378, 382-383 (9th Cir. 1979).)  TILA does not permit constructive disclosure of terms, but specifically provides for actual, express disclosures to be made to the borrower by the creditor.  (See, 15 U.S.C. § 1601 et seq.)  Plaintiff's FAC allegations adequately state the applicability of the equitable tolling doctrine.  Thus, Plaintiff's TILA damages claim is not barred.

### c.   Plaintiff's Loan Is Not Subject to Rescission

Plaintiff acknowledges that Plaintiff's mortgage subject to this litigation was a purchase money loan.  As such, it is not subject to rescission under TILA.  However, Plaintiff alleges he is entitled to rescission of the loan due to fraud and lack of "meeting of the minds" to form a contract at the inception of the of the of the loan, as discussed infra.

---

[4]The Plascencia court further held that the issue of equitable tolling must be considered when "the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." (Id., citing Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993).)

2.   **Second Cause of Action for Violation of Rosenthal Act is Sufficient to State a Cause of Action Against Defendants BAC and CHL**

In enacting Civil Code § 1788 et al., (the Rosenthal Act), the California Legislature found that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts.  Unfair or deceptive collection practices undermine the public confidence, which in turn is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.  There is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other.  (California Civil Code § 1788.1(a)(1) & (2).)

Contrary to the moving Defendants' position, Plaintiff clearly pled that Defendants CHL and BAC acted as a debt collector.[5]  (FAC ¶ 71.)  As to Defendant BAC, it clearly identified itself as a debt collector in correspondence sent to the Plaintiff.  (See, Plaintiff's Request for Judicial Notice in Support of Opposition to Defendants Motion to Dismiss and Motion to Strike ("Plaintiff's RFJN"), Exhibit 1.)

Further, Plaintiff has clearly alleged sufficient facts to state Rosenthal Act violation against Defendant CHL and BAC.  Plaintiff has alleged fraud at the inception of the loan due to toxic terms of the predatory loan actually sold to the Plaintiff.  (FAC ¶¶ 25-31.)  Plaintiff's FAC has alleged that, as a result of unfair and deceptive terms of the loan subject to this litigation, Defendant CHL falsely stated the amount of debt, increased the amount of debt by including amounts not permitted by law or contract, and used unfair and unconscionable means in an attempt

---

[5]Defendants CHL and BAC additionally claim that Plaintiff's Rosenthal claim fails by virtue of its inapplicability to foreclosure activities.  This argument is unwarranted since Plaintiff has clearly alleged that Defendants CHL and BAC engaged in unjust collection activities that were separate and apart from their foreclosure activities, and that were undertaken prior to foreclosure proceedings.  In particular, paragraph 72 of the FAC clearly states that Defendants CHL and BAC collected on a debt not owed to them, made false report to credit reporting agencies, falsely staetd the amount of a debt, unlawfully increased a debt and used unfair and unconscionable means to collect an unfair debt.  (FAC ¶ 72.)

to collect a debt against a void security interest.  (FAC ¶ 72.)[6]  Although Plaintiff's loan documents

identify the loan sold to the Plaintiff as a 30-year fixed loan, his monthly payments adjusted from

the initial $2,600.00 to $2,979.37 a month.  (FAC ¶ 26.)  (See also, Plaintiff's RFJN, Exhibit 1.)[7]

In short, due to fraud at the inception and the failure to provide statutory disclosures, Plaintiff's

loan is void and unenforceable against him by Defendant CHL.  (See e.g., In re Garcia, 11 B.R. 10,

*12 (Bankr. D. Ariz. 1981) (holding that failure to provide requisite disclosures to the debtor invalidates

the Trust Deed).)  Thus, Defendant BAC's collection of this unjust debt for Defendant CHL's benefit,

subjects Defendant CHL to liability under the Rosenthal Act .

    Furthermore,  immediately after Plaintiff defaulted on his loan, Defendant BAC has made

numerous phone calls, sent letters, and otherwise misrepresented material facts, intending to force

Plaintiff to either pay large sums of money to which neither Defendant CHL nor Defendant BAC

was entitled, or to abandon the property to foreclosure sale to moving Defendants' profit.  (FAC ¶

51.)  (See also, Plaintiff's RFJN, Exhibit 1.)  As such, Defendant BAC engaged in collection of an

unjust and fraudulent debt against Plaintiff's Property.  The latter allegations put Defendants CHL

and BAC on notice of the Rosenthal Act claim pled against them and allows Defendants CHL and

BAC to answer.  Accordingly, the moving Defendants' Motion to Dismiss Plaintiff's Rosenthal

Act claim should be denied.

### 3.    Plaintiff has Sufficiently Stated the Third Cause of Action for Negligence Against Defendants CHL, BAC, MERS and Recontrust

    A general duty not to harm another is owed to everyone.  (See, e.g., Norfolk Shipbuilding

& Drydock Corp. v. Garris, 532 U.S. 811 (2001); see also, Cal. Civ. Code § 1714; McGarry v.

Sax, 158 Cal. App. 4th 983 (2008); Giraldo v. Department of Corrections & Rehabilitation, 168

---

[6]Plaintiff's position is that Defendant CHL's objective in placing Plaintiff in a subprime loan was to ultimately foreclose upon Plaintiff's Property.

[7]Discovery is needed to determine the actual terms and actual type of loan sold to Plaintiff.  At this point, it is unclear, among other issues, if the loan is a 30-year fixed product or, based on TILA disclosures and the actual payment structure, is an adjustable rate loan.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

Cal. App. 4th 231(2008); <u>Peart v. Ferro</u>,119 Cal. App. 4th 60 (2004)  (holding that under general principles of negligence law, people have a duty to use due care to avoid injury to others and may be held liable if their careless conduct injures another person); <u>Rotolo v. San Jose Sports & Entertainment, LLC</u>, 151 Cal. App. 4th 307 (2007); <u>Titus v. Canyon Lake Property Owners Assn.</u>, 118 Cal. App. 4th 906 (2004).)  Negligence is the breach of a duty that directly causes damages. A plaintiff is entitled to damages from those defendants who concurred in the tortious scheme with knowledge of its unlawful purpose.  (<u>Black v. Sullivan</u>, 48 Cal. App. 3d 557, 566 (1975).)  Tacit consent as well as express approval is sufficient to establish liability.  (<u>Holder v. Home Sav. & Loan Assn.</u>, 267 Cal. App. 2d 91, 108 (1968).)

Defendants CHL owed a general duty of care to the Plaintiff to perform its lender function in such a manner as to not cause Plaintiff harm.[8]  Defendant CHL acted negligently when it placed Plaintiff into a toxic loan with a monthly payment that adjusted from a $2,600.00 to $2,979.37, which was against industry standards, and which resulted in excessive fees and payments in excess of Plaintiff's ability to pay.  (FAC ¶¶ 26, 78.)  (<u>See also</u>, Defendant's RFJN, Exhibit A and C; Plaintiff's RFJN, Exhibit 1.)  Plaintiff has further alleged that Defendant CHL failed to provide Plaintiff with requisite TILA and RESPA disclosures, which would have appraised Plaintiff about the terms of the loan that was actually being sold to him.  (FAC ¶¶ 62, 86.)  Plaintiff also alleged that Defendant CHL acted negligently when it failed to maintain the original Mortgage Note, and failed to properly create original documents.  (FAC ¶ 79.)  Plaintiff further pled that Defendant CHL engaged in civil conspiracy with other Defendants to place borrowers, Plaintiff included, in loans with relatively high yield spread premiums, in order to gain substantial profit.  (FAC ¶ 35.) As a result of Defendant CHL's negligence, Plaintiff's credit has been damaged and he is now facing a significant risk of losing his Property to foreclosure.  (FAC ¶ 80.)

---

[8]It is unclear whether Defendant CHL acted solely in the capacity of the lender, or whether it also performed duties of a broker and/or servicer in this case.  Discovery is needed to determine each Defendant's conduct, right and liabilities with respect to Plaintiff's loan.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

Similarly, Defendant BAC owed a duty to the Plaintiff to engage in servicing of Plaintiff's loan with due care to avoid harm to the Plaintiff.  (FAC ¶ 79.)  The FAC contains factual allegations that show fraud at the inception of the loan, which renders the loan invalid, of which Defendant BAC was aware.  (FAC ¶¶ 25-30.)  As a result, Plaintiff has alleged that Defendant BAC breached its duty when it took payments to which it was not entitled, charged fees it was not entitled to charge, and made or otherwise authorized negative reporting of Plaintiff's creditworthiness to various credit bureaus wrongfully.[9]  (FAC ¶ 80.)

With respect to Defendant MERS, it owed a duty to the Plaintiff to perform its administrative duties of recording Plaintiff's Note and Deed in such a manner as to not cause Plaintiff harm.  (FAC ¶ 79.)  Assuming *arguendo* that the nominee designation means that Defendant MERS acted as an administrative agent for Defendant CHL, Defendant MERS' charter allowed it to act in an administrative capacity only.  Defendant MERS' "Terms and Conditions" specifically prohibit it from acquiring any rights to any payments, servicing rights, or rights against any mortgaged properties owned by its "Members".  (FAC .)  Plaintiff alleges that Defendant MERS breached its duty when, without proper authority, it commenced foreclosure proceedings against Plaintiff's Property.  (See, RFJN, Exhibit D (identifying Defendant MERS as the beneficiary on whose behalf Defendant Recontrust initiated and completed the first round of foreclosure proceedings in this case).)  MERS is not and cannot be a beneficiary under any of Plaintiff's Note.  It did not lend the money to the Plaintiffs.  Further, Plaintiffs were not required by statute or contract to pay money to Defendant MERS on the mortgage.  Additionally, Plaintiff's Deed consistently refer only to rights of the Lender, including rights to receive notice of litigation, collect payments, and to enforce the debt obligation through foreclosure.  Plaintiffs' Deed

---

[9]Once Plaintiff became aware of the actual terms of his loan, he sent Defendant BAC a Qualified Written Request ("QWR"), whereby he requested documentation relating to Defendant BAC's servicing of the loan.  (FAC ¶ 33.)  To date, Defendant BAC has failed to properly respond to Plaintiff's QWR, further preventing Plaintiff from determining the actual terms of his loan.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

consistently limit Defendant MERS to acting "solely" as the nominee of the Lender.  As a result, in its capacity as a nominee for the Defendant CHL, Defendant MERS did not have ownership interest as a beneficiary and consequently acted negligently when it foreclosed against Plaintiff's Property as a beneficiary.

As to Defendant Recontrust, it owed Plaintiff a duty to conduct its trustee responsibilities with requisite level of care, including following statutory and procedural requirements attendant to foreclosure under California law.  Defendant Recontrust breached its duty when it initiated, conducted, and concluded a non-judicial foreclosure that was procedurally defective.  (FAC ¶ 79.) (See also, Defendants' RFJN, Exhibit G.)  As such, Defendant Recontrust's conduct with respect to Plaintiff's Property was negligent *per se*.  (See, Ramirez v. Nelson, 138 Cal. App. 4th 890 (2006); Quiroz v. Seventh Ave. Center, 140 Cal. App. 4th 1256 (2006).)  Defendant Recontrust further breached its statutory duties set forth under California's non-judicial foreclosure scheme, when it failed to re-notice the Plaintiff regarding an upcoming trustee's sale. (See e.g., Defendants' RFJN, Exhibit E.)  Since Defendant Recontrust has rescinded the former Trustee's Deed, the parties have now been returned into the same position they were in prior to Defendant Recontrust's issuance of the NOD.  Defendant Recontrust was required to issue a new NOD, pursuant to Cal. Civ. Code § 2923.5, in order to restart the foreclosure process.  Defendant Recontrust's failure to do so constitutes negligence *per se*.  Thus, Plaintiff has properly pled the factual basis and the elements stating a negligence claim against the moving Defendants. Defendants CHL, BAC, MERS and Recontrust's Motion to Dismiss should be denied.

**4.      Fourth Cause of Action for Violation of RESPA is Sufficient to State a Cause of Action Against Defendant CHL and BAC**

In their Motion to Dismiss, Defendants CHL and BAC blatantly misconstrue Plaintiff's RESPA allegations when they state that the FAC pled violation of the RESPA disclosure requirements and provisions applicable to servicers against both Defendants.  To the contrary,

1   Plaintiff's FAC undoubtedly alleges violation of RESPA disclosure requirements against Defendant

2   CHL in paragraph 86 and violation of RESPA servicer provisions against Defendant BAC in

3   paragraph 87-88.

4

5           **a.**    **Violation of RESPA Disclosure Requirements Was Sufficiently Pled Against Defendant CHL**

6         The entire purpose of RESPA is to protect the purchaser from unnecessarily high

7   closing/escrow costs, the elimination of kickbacks or referral fees, and reduction of the amounts

8   that buyers are required to place in escrow accounts for taxes and insurance. (See, 12 U.S.C. §

9   2601; see also, 12 C.F.R. § 3500.2(b).) To accomplish this purpose, RESPA requires lenders to

10  provide borrowers with an itemized list of charges to be imposed on the seller and the borrower,

11  including a description of the interests insured under the title policy, before the close of escrow.

12  (See, 12 U.S.C. § 2603(b), 12 C.F.R. § 3500.7(c)(2).)

13

14        The moving Defendants seem to argue that Plaintiff did not plead his RESPA Cause of

15  Action with appropriate specificity.[10]  As before, the Federal Rule of Civil Procedure 8 only

16  requires Plaintiff to give Defendant CHL notice of the RESPA dislosure claim alleged against it.

17  Plaintiff is not required to plead specific RESPA sections or facts to assert a RESPA claim against

18  Defendant CHL.  Plaintiff has clearly alleged that Defendant CHL violated RESPA at the time of

19  closing on the sale of the Property by failing to correctly and accurately comply with the disclosure

20  requirements provided therein.  (FAC ¶ 86.) The only disclosures mandated under RESPA at the

21  time of closing, are those pertaining to the escrow costs.  (See, 12 U.S.C. § 2601; see also, 12

22  C.F.R. § 3500.2(b).)  As such, Plaintiff sufficiently pled the RESPA claim against Defendant CHL.

23

24

25

26

27  _____

28     [10]In support, Defendants CHL and BAC misstate the holding in Marcelos v. Dominguez, 2008 WL
1820683 (N.D. Cal. April 21, 2008).  In that case, Court dismissed the RESPA claim because plaintiff did not
satisfy the equitable tolling doctrine, **not** because the plaintiff failed to allege what kickbacks, unearned fees, etc
the defendants allegedly took or made.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

### b.   Violation of RESPA Servicer Provisions Has Been Appropriately Alleged Against Defendant BAC

With respect to Plaintiff's Qualified Written Request ("QWR" or "Request"), moving Defendants do not dispute that Plaintiff served a QWR on Defendant BAC on April 9, 2009 and that it has failed to respond.  (FAC ¶¶ 33, 87.)  Defendant BAC seems to justify its failure to respond by contending that the Request did seek the "correct" inquiry because it purportedly sought information relating to loan origination.[11]  This is patently false.  The QWR submitted to Defendant BAC included, among other things, a specific request for documents relating to the servicing of Plaintiff's loan subject to this litigation and a statement of the reasons for Plaintiff's belief that his loan is in error.  Pursuant to 12 U.S.C. § 2605(e)(2), Defendant CHL had a statutory duty, within 60 days of the receipt of Plaintiff's QWR, to furnish Plaintiff with a written explanation of the status of the loan, as well as the documentation requested by the Plaintiff.  Defendant CHL failed to properly respond to either.  (FAC ¶¶ 87.)  The plain purpose of RESPA's Section 6 is to provide borrowers, Plaintiff included, with important consumer protections relating to the servicing of their loans.  Defendant CHL's defense is thus neither sufficient nor valid, and the FAC has alleged actionable conduct at the time of formation of this loan and thereafter. (FAC ¶¶ 87-88.)

Further, it remains unclear whether Defendants named in this lawsuit, moving Defendants included, received "kickbacks" or referral fees disproportional to the work performed, which is prohibited under 12 U.S.C. § 2607(a).[12]  It is also unclear whether the moving Defendants were part of the overall scheme to make $100 million dollars into $3 billion dollars just by transferring ownership.  However, dismissal at this time would be premature and  inappropriate.  Thus, the

---

[11]Moving Defendants also assert that Plaintiff's QWR was not proper because it sought rescission under TILA.  However, rescission was just one of the items addressed by Plaintiff's Request.

[12]All Defendants, including Defendants CHL and BAC, are alleged to have conspired together to create this fraudulent scheme.  There has been no discovery at this point in the litigation.  It is impossible to determine to a certainty the exact role and liability of each Defendant.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

Court should deny Defendants CHL and BAC's Motion to Dismiss Plaintiff's RESPA Cause of Action.

### 5.    Fifth Cause of Action for Breach of Fiduciary Duty is Sufficient to State a Cause of Action Against Defendant CHL

Under general principles of agency and statutory real estate law, a fiduciary relationship exists between a real estate loan broker and the borrower.  (See e.g., Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 782 (1979) (broker's failure to orally disclose actual interest rate, late payment penalty, and correct amount of balloon payment was breach of fiduciary duty.)  Under the reasoning in Wyatt, a lender is liable along with the loan broker if the lender, or its authorized agents, "directly ordered, authorized or participated in" the broker's tortious conduct.  (Id. at 785; see also, Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991).)  Further, a defendant who assents, tacitly or expressly, to the tortious scheme of another with knowledge of its unlawful purpose is subject to liability.  (Black v. Sullivan; (Chicago Title Ins. Co. v. Great Western Financial Corp., 69 Cal.2d 305, 316 (1968)); Holder v. Home Sav. & Loan Assn., 267 Cal. App. 2d 91, 108 (1968).)

Plaintiff pled sufficient facts to show that Defendant CHL owes Plaintiff a fiduciary duty in this case.  Plaintiff pled that lenders, including Defendant CHL, regularly trained, directed, and/or participated with mortgage brokers and loan officers to implement the scheme, whereby brokers and loan officers received greater commission or bonus for placing borrowers into loans with relatively higher yield spread premiums, Plaintiff's loan included.  (FAC ¶¶ 22, 35, 98.)  Further, Plaintiff has alleged that Defendant CHL directly ordered, authorized or participated in Defendants Ron Allen & Associates Real Estate ("RAARE") and Ronnie D Allen ("Allen") tortious conduct. (FAC ¶ 98.)  In particular, Plaintiff alleged that Defendant CHL engaged in a "civil conspiracy" with the broker Defendants, whereby Defendant CHL knowingly and intentionally approved a loan to Plaintiff, which was based on overstated income and included predatory loan terms, simply to

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

make a substantial profit for itself.  (FAC ¶ 27, 97-98.)[16]  For these reasons, the Court should deny Defendant CHL's Motion to Dismiss FAC's Breach of Fiduciary Duty Claim.

**6.**      **Sixth Cause of Action for Fraud is Sufficient to State a Cause of Action Against Defendants CHL, BAC, MERS and Recontrust**

Relying on California caselaw, the moving Defendants assert that Plaintiff failed to plead his fraud claim with requisite specificity.  (Motion to Dismiss, 12:4-8.)  Unfortunately, Defendant CHL failed to recognize that this controversy is before a federal court.  "[T]he rules regarding the standard of specificity to be applied to federal pleadings...are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting."  (5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1204 (2008) (collecting cases); see, e.g., Hanna v. Plumer, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law.").)  Consequently, California pleading requirements are irrelevant to the integrity of Plaintiff's claim in federal court, and are inapplicable in this case to the extent they impose a pleading standard inconsistent with Rule 9(b).  (See, Adams v. SCME Mortgage Bankers, Inc., 2009 U.S. Dist. LEXIS 46600, *13-16 (E.D. Cal. May 22, 2009).)

At this point, all Plaintiff is required to do is state the factual basis for his fraud claim pursuant to Rule 9(b).  To meet the requisite level of specificity, Rule 9(b) only requires identification of circumstances constituting fraud, including the time, place, and nature of the alleged fraudulent activities, such that a defendant can prepare adequate answer to allegations. (Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977).)  A pleading is sufficient under Rule 9(b) if it identifies circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. (Neubronner v. Milken, 6 F.3d 666, 671-672 (9th

---

[16]Further, Plaintiff alleged that Defendant CHL, through its own action, interfered with Defendants RAARE, Allen and Weathers' fiduciary obligations by offering them financial incentives to violate Plaintiff's trust. (FAC ¶ 98.)  As such, Defendant CHL authorized and directed broker Defendants RAARE, Allen and Weathers conduct with respect to Plaintiff's loan.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

Cir. 1993), quoting <u>Gottreich v. SF Inv. Corp.</u>, 552 F.2nd 866 (9th Cir. 1977).)  However, Rule

9(b) does not require nor make legitimate pleading of detailed evidentiary matter.  (<u>Walling v.

Beverly Enterprises</u>, 476 F.2d 393, 397 (9th Cir. 1973).)[17]  Rule 9(b) may be relaxed with respect

to matters within opposing party's knowledge.  <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir.

1993).)  Under Rule 9(b), it is also not necessary, once complaint adequately identified particular

defendant with category of defendants allegedly responsible for some continuing course of

conduct, to plead more than group conduct of defendants.  (<u>In re Equity Funding Corp. of Am.

Sec. Litig.</u>, 416 F.Supp. 161, 181 (C.D. Cal. 1976).)  Moreover, in cases where fraud was

conducted over several years, a plaintiff is not required to allege each date of each defendant's

fraudulent conduct since such requirement would defeat the purpose of Rule 8 requiring that

pleading be short, plain, and in concise statements.  (<u>Id.</u>)

In this case, Plaintiff has identified specific facts and circumstances that constitute fraud.

This allows the moving Defendants to prepare an adequate answer.  Plaintiff alleged that he was

fraudulently induced into accepting a predatory mortgage loan from Defendant CHL with terms

that were detrimental to him on August 3, 2007 by Defendants RAARE, Allen and Weathers.

(FAC ¶¶ 22-25.)  This fraud was tacitly accepted and endorsed by Defendant CHL when it

approved Plaintiff's loan based on overstated loan application and express misrepresentations of

the broker Defendants, and collected on by Defendant BAC.  (FAC ¶¶ 27, 91-98.)  Plaintiff also

pled that he was induced into this loan by promises that he could refinance if the loan ever became

unaffordable. (FAC ¶ 28.)  Further, as enumerated above, Plaintiff alleged that Defendant CHL

failed to provide Plaintiff with any of loan documents prior to signing or any of the requisite

statutory disclosures to appraise Plaintiff of the terms of the loan that was actually sold to him.

(FAC ¶¶ 62, 86.)  This clearly and specifically alleged misrepresentations and fraudulent

---

[17]As one California court put it succinctly, "F.R.Civ.P. 9(b)'s heightened pleading standard 'is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity.'" (<u>Adams</u>, <u>supra</u>, 2009 U.S. Dist. LEXIS 46600, *14-15.)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

concealment by the moving Defendants at the inception of Plaintiff's loan.

Furthermore, Plaintiff has alleged that Defendants MERS, and consequently Defendant Recontrust, misrepresented its interest in Plaintiff's Property when it initiated foreclosure proceedings against Plaintiff's Property, in a beneficiary capacity. (See, Defendants' RFJN, Exhibit D.) Plaintiff has also alleged that Defendant MERS' actions were undertaken with the purpose of concealing identities of the actual beneficial owner of Plaintiff's loan.  Plaintiff has pled that  the entire scheme of selling and transferring notes and deeds, in which Defendant MERS played a central role, was fraudulent.  (FAC ¶¶ 18, 34.)  Plaintiff has also alleged that Defendant MERS played a key part in a scheme whereby Defendants, over the period of two years, sold Plaintiff's home loan to other financial entities, which "pooled" large number of loans, put them into trusts, and sold securities based on them.  (FAC ¶ 19.)   Thus, none of the moving Defendants had an enforceable interest in Plaintiff's Mortgage Note or Deed of Trust.  As such, moving Defendants are attempting to obtain putative legal title to Plaintiff's Property without ever establishing that either of them was ever a "person entitled to enforce" the security interest under the Note and Deed of Trust.  (FAC ¶ 34.)  This was part of a pattern of unlawful activity to conspire with others to utilize the non-judicial foreclosure structure of California law to unlawfully take Plaintiffs' house.  These allegations, which, for the purposes of this Motion to Dismiss, must be taken as true, establish a claim for fraud and give the moving Defendants sufficient notice to mount a defense.

Lastly, this action raises the issue of fraud in the inducement of the loan and fraud in subsequent actions by the moving Defendants.  Frankly, it would be wrong to apply a bar of recovery against the Plaintiff when majority of evidentiary facts in this case were purposefully hidden from Plaintiff at the inception of the loan and continue to be hidden from him to this day. (FAC ¶¶ 27, 29-30.)  Said facts are wholly within each of the named Defendants' knowledge, and

discovery is needed to determine each Defendant's role and liability in this case.[18]  To deny Plaintiff recovery would condone fraud.  The law cannot condone such a result.  Accordingly, Defendants CHL, BAC, MERS and Recontrust's Motion to Dismiss Plaintiff's claim for Fraud should be denied.

**7.    Seventh Cause of Action for Unfair Business Practices is Sufficient to State a Cause of Action Against Defendants CHL, BAC, MERS, Recontrust**

The UCL prohibits "any unlawful", unfair or fraudulent" business practice.  (Cal. Bus. & Prof. Code § 17200.)  A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer.  (Podolsky v. First Healthcare Corp.., 50 Cal. App. 4th 632, 647 (1996).)  A practice is fraudulent if the members of the public are likely to be deceived by the practice.  (Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).)  The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices that specifically prescribed by any other law.'"  (Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122, (9th Cir. 2009), quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002).)

Moving Defendants argue that Plaintiff's UCL claim is preempted by TILA and RESPA.  This position is contrary to law.  It is well-established that TILA and RESPA statutes do not preempt the California UCL law.  (See, Amparan v. Plaza Home Mortg., 2008 WL 5245497, at *11-12 (N.D. Cal. Dec. 17, 2008) (TILA does not preempt UCL claims based upon alleged violations of TILA); see also, Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1099 (N.D. Cal. Sep. 30, 2008) (same).)

Here, Plaintiff has made viable charging allegations that Defendants CHL, BAC, MERS

---

[18]In particular, the identities of Defendant CHL's underwriters, who approved a loan despite the misrepresentations made to Plaintiff.  It was the lending industry custom not to reveal identities of the loan underwriters to prevent inappropriate contact and influence from the borrower.  As such, discovery is essential in this case.

and Recontrust have engaged in unfair and fraudulent business practices.  Plaintiff has alleged multiple violations ("hooks") of specific statutory and common law provisions under the federal and state laws, including claims for TILA and RESPA violations, fraud, negligence, and Rosenthal Act violations, among others, against the moving Defendants.  The latter in turn are incorporated into the Plaintiff's UCL claim.  Further,  Plaintiff believes that Defendants' practice of placing uninformed borrowers, Plaintiff included, into loans with exceedingly unfavorable terms to them is not only fraudulent, but also clearly deceiving to the public.  (FAC ¶ 25-30.)  Additionally, Plaintiff has alleged that Defendant CHL's practice of steering and encouraging borrowers, Plaintiff included, into loans with terms unfavorable to them, or loans which the borrowers, Plaintiff included, were not qualified to obtain is unethical, unlawful and egregious, particularly because it was done solely for Defendants' financial gain.  (See, FAC ¶¶ 91-98.)  Further, Plaintiffs have pled that Defendants CHL and BAC had a duty to disclose certain information as mandated under TILA and RESPA respectively, and other applicable state and federal laws.  (FAC ¶¶ 62-86-88.)

Plaintiff has also made viable charging allegations that Defendant MERS and Recontrust has engaged in unfair and fraudulent business practices.  In particular, Plaintiff has clearly pled that Defendant MERS engaged in transacting business in the state of California, in violation of Cal. Corp. Code § 2105(a).  (FAC ¶ 9; see, Farmers Ins. v. Exchange v. Superior Court, 2 Cal. 4th 377, 383 (1992).)  Citing to Cal. Corp. Code §§ 191(c)(7) and 191(d)(3) Moving Defendants argue that Defendant MERS is exempt from obtaining a certificate of qualification from the Secretary of State before transacting business in California.  (Motion to Dismiss, 4:22-28.)  Preliminarily, Cal. Corp. Code § 191(c)(7) is inapplicable to Defendant MERS.  Acting as a beneficiary is doing more than merely performing an administrative tasks permitted under the statute.  In particular, foreclosing against Plaintiff's Property as a beneficiary, in violation of its charter and without any legal authority to do so, and substituting a trustee in a beneficiary capacity is outside of scope of Cal. Corp. Code §191(c)(7).  Secondarily, Cal. Corp. Code § 191(d)(3) does not apply to Defendant MERS because it is made applicable only to lending institutions, and not the recording arm of the

lending industry.

Similarly, Plaintiff has alleged that Defendant Recontrust has engaged in unlawful practice of noticing a trustee's sale without first complying with the NOD notice provisions set forth under Cal. Civ. Code § 2924 et seq.  (FAC ¶¶ 131-132.)  Further, Defendant MERS' practice of foreclosing as a beneficiary against borrowers, Plaintiff included, without any legal right to do so purportedly in the name of efficiency, is deceiving to the public and far outweighs the resulting harmful impact on the Plaintiff.  (See, Plaintiff's RFN, Exhibit 2; see also, Defendants' RFJN, Exhibit D.)

These allegations are sufficient for Rule 8 purposes to place each of the Defendants CHL, BAC, MERS, and Recontrust on notice of the UCL claim pled against them.  Accordingly, the Court should deny the moving Defendants' Motion to Dismiss Plaintiff's UCL claim.

### 8.   Plaintiff Has Sufficiently Stated a Claim for Breach of Contract Against Defendant CHL.

To state a claim for breach of contract under California law, Plaintiffs must allege: (1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance of the contract, (3) defendant's breach of the contract, and (4) resulting damage.  (Armstrong Petroleum Corp. v. Tri-valley Oil and Gas Company, 116 Cal App 4th 1375, 1390 (2004); Westways World Travel v. AMR Corp., 182 F Supp. 2d 952, 963 (C.D. Cal. 2001).)

Defendant CHL argues that Plaintiff did not specify the terms of the contract, nor attach a written contract to his FAC.  As before, California pleading requirements set forth in caselaw cited in the moving papers are irrelevant to the integrity of Plaintiff's federal claim.  The pleadings filed in federal action, such as here, are governed by Rule 8.  (Wright & Miller, supra, § 1204; Hanna, supra.)

Defendant CHL is named as a beneficiary on Plaintiff's Deed of Trust and Note.  (See, Defendants' RFJN, Exhibits A and B.)  The Note, a contractual agreement between the Plaintiff and Defendant CHL, imposes contractual obligations on the parties listed therein.  The terms of the

Note, albeit not directly negotiated by Defendant CHL as an entity, were approved and accepted by Defendant CHL, which is conceded by moving Defendants.  (See, Motion to Dismiss, 13:18-19.)  Defendant CHL is thus subject to the express terms and attendant promises made regarding the loan, and subsequently the Note.  Under the terms of the Note, Plaintiff alleged he was promised a 30-year fixed loan with a monthly payment of approximately $1,600.00.  (FAC ¶¶ 25-26.)  Further, the terms of the Note included a promise to refinance Plaintiff's loan when it became unaffordable.  (FAC ¶ 28.)  Plaintiff pled that the promise to refinance Plaintiff's loan was sufficiently definite to induce Plaintiff into accepting the loan from Defendant CHL.  (FAC ¶¶ 28, 117.)  Plaintiff also pled that Defendant CHL not only failed to provide Plaintiff with a loan he desired, but actually sold him a toxic, unaffordable loan which actually adjusted upward to $2,979.37. (FAC ¶¶ 25-30, 117.)  These facts provide reasonable notice to Defendant CHL of the claim sufficient to satisfy the requirements of Federal Rule of Civil Procedure 8(a).  (See, StreamCast Networks, Inc v. IBIS LLC, No. 05-4239, 2006 WL 5720345, at *7, 16-17 (C.D. Cal. May 2, 2006).)  Plaintiff has identified the breach that Defendant CHL committed and asserts that he has been damaged as a result. (FAC ¶¶ 116-118.)  As a direct result of these breaches, Plaintiff suffered damages and injuries according to proof at trial.  (FAC ¶ 119.)

Defendant CHL also seem to argue that Plaintiff's Eight Cause of action is barred because Plaintiff has not alleged performance under the Note.  (Motion to Dismiss, 13:17-18.)  This is false.  Plaintiff's FAC states: "Plaintiff fully performed his duties under the contract with Defendant[]...CHL."  (FAC ¶ 116.)  As such, Plaintiff's Breach of Contract claim is not barred and this Court should deny Defendant CHL's Motion to Dismiss Plaintiff's Breach of Contract claim.

**9.**     **Ninth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing is Sufficient to State a Cause of Action Against Defendants CHL, BAC, MERS and Recontrust**

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  (Marsu, B.V. v Walt Disney Co., 185 F 3d. 932, 937 (9th Cir. 1999), quoting Carma Developers, Inc v Marathon Dev. Cal., Inc., 2 Cal 4th 342, 371 (1992).)

Further the implied covenant of good faith and fair dealing required that neither party will do anything which will injure the rights of the other party to receive benefits of the agreement. (Andrews v. Mobile Aire Estates 125 Cal. App. 4th 578, 589 (2005), quoting Gruenberg v Aetna Ins. Co. 9 Cal. 3d 566, 573 (1973).)  Moreover, "the commencement of negotiation activities looking to the final achievement of a contractual agreement imposes...[an] obligation of good faith or fair dealing...[where] there is an underlying agreement of some sort which provides the contractual commitment to use best efforts."  (Racine & Laramie v. Dep't of Parks & Rec., 11 Cal. App. 4th 1026, 1033 (1992).)

This Cause of Action incorporates the conspiratorial nature of the overall transaction. Accepting the pleading as true, moving Defendants are guilty of not dealing in good faith.  In fact, self-dealing is exactly what occurred.  Defendant CHL placed Plaintiff into a toxic loan with predatory terms, resulting in significant harm to the Plaintiff, which was enforced by Defendant BAC.  This loan scheme was put into place by Defendant MERS and perpetrated for each moving Defendants' monetary gain, and done with conscious disregard for the Plaintiff's rights.

Defendant CHL argues that it Plaintiff fails to state this Cause of Action against it because it owed Plaintiff no duty to disclose that he did not have the ability to repay.  This argument is misleading and serves to divert the Court's attention from the substantive issues at hand.  Plaintiff **did not allege** that Defendant CHL had an obligation to advise him of his ability of inability to pay. However, Plaintiff did allege that CHL had a statutory duty to disclose the **actual, true terms** of the loan being sold to him.

Moving Defendants additionally assert that, in the absence of contractual privity between the Plaintiff and each of the Defendants BAC, MERS and Recontrust, Plaintiff may not recover for breach of implied covenant of good faith and fair dealing.  (Motion to Dismiss, 14:20-27.)  This is contrary to law.  A tort recovery is permissible in cases of a violation of an independent duty arising from principles of tort law.  (See, Sutherland v. Barklays American/Mortgage Corp., 53

26

Cal. App. 4th 299, 314 (1997).)  As discussed supra, in this case each of the moving Defendants breached its duty of care, which duty is rooted in tort law.  As such, Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Cause of Action has been properly pled.  Thus, the Court should deny the moving Defendants' Motion to Dismiss Plaintiff's Ninth Cause of Action.

      **10.**    **Tenth Cause of Action for Wrongful Foreclosure is Sufficient to State a Cause of Action Against Defendants BAC and Recontrust**

          **a.**    **The Non-Judicial Foreclosure Procedural Scheme Set Forth in California Civil Code § 2924 et seq. Does Not Supplant Legal Requirement in California Commercial Code § 3301 et seq.**

Moving Defendants argue that California Civil Code § 2924 exclusively governs non-judicial foreclosures. (Motion to Dismiss, 15:3-14.)  The original source for the exclusive language statement is Homestead Savings v. Darmiento, (1991) 230 Cal.App.3d 424. In Homestead, the court made clear section 2924 created "minimum standards."  In Homestead the court explained that :

> Section 2924 et seq. is part of a comprehensive scheme designed to protect debtors from abuse practices that had been associated with powers of sale in deeds of trust.  The Legislature began the 'comprehensive scheme' in 1917 and had continued to establish certain minimum standards for conducting non-judicial foreclosures by placing restrictions on the creditor's exercise of the power of the sale in order to protect the trustor/debtor against forfeiture. (Id., 230 Cal.App.3d at 433.)

If placing restrictions on creditors' exercise of the power of sale was the intent, it must follow that a 'minimum standard' would require a stranger to the note to prove that it can enforce it.  This requirement was important even before the emergence of the "securitization" of mortgages and of international investment funds.  In 1917, the California legislature may not have foreseen the emergence of international investment funds and a global market for securitized mortgages, but the court held that the statute expressly applies to parties to a contract. (Moeller v. Lien (25 Cal.App.4th 822, 834.)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

In <u>Moeller,</u> the court stated that incorporating "unrelated cure provisions" into the non-judicial foreclosure scheme would be insistent with the holding in <u>Homestead Savings</u>.  (<u>Id</u>.)  It would be a nifty trick to convince this Court, and the public at large, that the well established requirement one be a party to an obligation, i.e. a holder of the Note, as expressed in <u>Moeller</u> and section 2924(a), is an "unrelated cure provision."  To the contrary, the statute was designed to prevent fraud.  This Court should ensure that if one seeks to claim a "breach of the obligation," and begin the proceedings for a non-judicial foreclosure, such as Defendants BNC and Recontrust, that it does not commit fraud.  This action would be consistent with the statute and with the holding in <u>Saxon Mortgage Services v. Hillery</u>, 2008 U.S. Dist. LEXIS 100056, *15, *16 (N.D. Cal. 2008), which held that note and the mortgage must be together in order to proceed in a non-judicial foreclosure action.

Finally, California Civil Code section 2924 provides that a recital in a deed executed pursuant to section 2924 constitutes prima facie evidence of compliance with the requirements, and conclusive evidence thereof in favor of a bona fide purchaser for value and without notice. (Cal. Civ. Code § 2924(c).)  While it has been held that the prima facie evidence of compliance with the requirements can be rebutted,  <u>Moeller</u>, <u>supra</u>, if a bona fide purchaser takes title of the property for value without notice, the plaintiff would not be allowed to rebut the presumption and the home would be lost.

Here, Plaintiff asserts that the facts alleged in their FAC, taken as true, sufficiently rebut the presumption. Indeed, where there have been transfers, as in this case, one method of rebutting the presumption is to test the efficacy and legality of the purported transfers, and to seek production of the original promissory note to determine whether Defendants BAC and/or Recontrust, or any of the other named Defendant, have the legal right and authority to engage in the conduct which has given rise to the instant dispute.

In sum, a negotiable instrument can only transfer via negotiation and/or endorsement.  (Cal. Com. Code § 3301 et seq.)  Plaintiff alleged that no interest in Plaintiffs' Notes, Deeds, or Property were ever legally transferred to Defendants BAC and Recontrust. (FAC, ¶ 129-130.) Further, Plaintiffs alleged that Defendants BAC and Recontrust failed to comply with statutory requirements pertaining to the transfer of the Notes and the Deeds.  (FAC, ¶¶ 132, 134.)  Thus, any foreclosure proceeding initiated by the moving Defendants would be illegal, unless Defendants BAC or Recontrust, or any other Defendant named herein, can produce the Note as required by statute.  None of the Defendants named in this case, including Defendants BAC and Recontrust, have proffered such proof.

### b.   Moving Defendants Are Statutorily Required to Produce the Note.

Moving Defendants further argue that possession of the promissory note is not a prerequisite to initiating the foreclosure sale.  (Motion to Dismiss, 15:15-28, 16:1-8.)

In recent federal and state cases, courts have found that the note and the mortgage must be together in order to proceed in a non-judicial foreclosure action. (Saxon Mortgage Services v. Hillery, 2008 U.S. Dist. LEXIS 100056, *15, *16 (N.D. Cal. 2008)  "Under California law, only the holder of the promissory note is entitled to enforce it..."  (In re Vargas, 396 B.R. 511 (Bankr. C.D. Cal. 2008).) When a note secured by a mortgage is transferred, "transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter"  (Id., citing Carpenter v. Longan, 83 U.S. 271 (1872).)

The Supreme Court in Carpenter went on to note the corollary principle: "[g]iven that the debt is the principal thing and the mortgage is an accessory, the mortgage can have no separate existence." (Id. at 274.)  For this reason, "an assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." (Id; See also,  In re Leisure Time Sports, Inc. 194 B.R. 859, 861 (9th Cir. 1996) (stating that "[a] security interest cannot exist, much less be transferred independent from the obligation which it secures" and that, "[i]f the debt is not

transferred, neither is the security interest"); <u>Kelley v. Upshaw</u> (1952) 39 Cal.App.2d 179, 192 (stating that assigning only the deed without a transfer of the promissory note is completely ineffective); <u>In Re Foreclsoure Cases</u> (521 F.Supp.2d 650, 653 (S.D. Ohio 2007) (holding that defendant must show it is the **holder of the note and the mortgage** before proceeding forward in its foreclosure action (emphasis added); <u>Restatement (3) of Property (Mortgages)</u> § 5.4.(stating that "[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the <u>obligation</u> that the mortgage secures")(**emphasis added**).)

None of the Defendants named in this case, including Defendants BAC and Recontrust, have proffered proof of ownership of the Note.  For this reason, Plaintiff alleged that each of the Defendants BAC and Recontrust is a third party stranger to Plaintiff's Mortgage Note and Deed of Trust.  Plaintiff alleges that none of the Defendants, including Defendants BAC and Recontrust, were in possession of the Note, and are not beneficiaries, assignees or employees of the person or entity in possession of the note, and are not otherwise entitled to payment.  (FAC ¶ 130.)  As such, neither of the Defendants BAC and Recontrust is not a "person entitled to enforce" the security interest on the Property, as that term is defined in Cal. Com. Code § 3301.  (FAC ¶¶ 50, 130.) The California Legislature never intended to allow a third-party stranger to a mortgage transaction, as alleged here, to take title to a property by simply filing a fraudulent document with the County Recorder's Office.

Moreover, a party seeking to secure performance of an obligation, when a breach of the obligation between the parties has occurred, may enforce the security instrument only after complying with the remainder of the statute. (Cal. Civ. Code § 2924.)  However, "the language of the statute is expressly applicable only as between parties to a contract."  <u>Moeller v. Lien</u> (1994) 25 Cal.App.4th 822, 834.  Since neither Defendants BAC nor Recontrust have possession of the Note it is not a party to this contract with the Plaintiff and cannot enforce the security agreement.

      **c.**      <u>**Plaintiff Need Not Actually Tender Bond to Plead Wrongful Foreclosure.**</u>

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

Defendants BAC and Recontrust argue that Plaintiff lacks standing because he must tender payment of the undisputed portion of the indebtedness in order to challenge the validity of a foreclosure.

It is settled law in California that a tender need not be made where it would be inequitable to do so.  This principle was established in Humboldt Sav. Bank v. McCleverty, 161 Cal. 285, 291 (1911), which held that "...it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale."  More recently, in Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (1997), the court ruled that "a tender may not be required where it would be inequitable to do so."  Further, this Court may permit the trustor to set aside the foreclosure sale on condition that the payment be made after entry of judgment.  (Holland v. Pendleton Mtge. Co., 61 Cal. App. 2d 570, 578 (1943); see also, Lo v. Jensen, 88 Cal. App. 4th 1093, 1099 (2001) (holding that requiring bond where plaintiffs claimed fraud in the trustee's sale is improper.)[19]  Plaintiff alleged fraud at the inception of the loan transactions, and further that Defendants, including Defendants BAC and Recontrust, engaged in fraud in attempting to obtain putative title to Plaintiffs' Property.  (FAC, ¶¶ 25-30.)

More importantly for this stage of the proceedings, Plaintiff has no idea how much to tender.  Discovery will be required to determine the total fees and costs taken from Plaintiff at the time of the loan origination and their total payments over the life of the loan.  These amounts will be credited against the gross amount owed to determine the tender requirement.  Under the California law, plaintiffs' right to a setoff can be used to satisfy the tender requirement. (Hauger v. Gates, 42 Cal. 2d 752, 753 (1954).)  Further, even if Plaintiff presently did not allege sufficient funds available to make the tender at this time, that does not mean that he will unable to do so at a later time.  Circumstances may very well change between now and time of tender.  Accordingly,

---

[19] A Local state court has taken a similar position, when it ruled that "[t]he allegation that Plaintiff is able and willing to tender is sufficient for pleading purposes.  The facts regarding plaintiff's ability to tender may be explored through appropriate discovery."  (See, Tentative Ruling, Evans v. Fremont Investment & Loan, 34-2008-00002684-CY-BT-GDS (May 21, 2009).)

Plaintiff's failure to allege that they are ready, willing and able to tender the proceeds is not fatal to

their claim at this early stage of the proceedings.   Moreover, this Court can exercise its equitable

discretion to allow an action to set aside a trustee's foreclosure sale to proceed in the absence of

showing that one can make the tender.   Accordingly, Plaintiff's failure to allege that they are ready,

willing and able to tender the proceeds is improper and not fatal to pursuing their Wrongful

Foreclosure cause of action.   Accordingly, the Court should deny Defendants BAC and

Recontrust's Motion to Dismiss the Wrongful Foreclosure Cause of Action.

**C.**   **Defendants' Motion to Strike Must Be Denied Because Plaintiff Has Alleged Sufficient Facts to Warrant Recovery of Punitive Damages and Attorneys' Fees.**

Moving Defendants move to strike Plaintiff's allegations set forth in the FAC ¶¶ 65, 67, 74,

89, 100, 108, 113, 120, 127, 140, PRAYER ¶¶ 6, 7.   In essence, Defendants are asking the Court

to strike all of Plaintiff's substantive allegations and causes of action.   This is improper, particularly

given that motions to strike are generally disfavored because they "potentially serve only to delay."

(Heller Fin. Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989); see also, LaSalle

Bank Nat'l Assoc. v. Paramount Props., 588 F.Supp.2d 840, 860 (N.D. Ill. 2008).)   To the extent

that Defendants seek to strike Plaintiff's allegations seeking punitive damages and attorneys' fees,

the Motion to Strike should be denied for the following reasons.

Plaintiff has alleged that the moving Defendants have engaged in "despicable conduct"

offensive to reasonable people and done with conscious disregard of her rights.   The FAC's Sixth

Cause of Action is for Fraud, and has been pled with sufficient specificity as discussed above.   Cal.

Civ. Code § 3294 specifically permits recovery of punitive damages where defendant has engaged

in "oppression, fraud and malice."   Further, Plaintiff has alleged in her FAC that Defendant MERS

has wilfully, and with full knowledge and/or reckless disregard for consequences, acted in bad faith

toward Plaintiff by failing to comply with its own "Terms and Conditions" and multiple statutory

provisions, including, but not limited to, provisions relating to possession and transfer of Plaintiff's

Note and Deed in accord with Cal. Com. Code §§ 3301 and 3309.   (FAC ¶ 32.)   Additionally,

Plaintiff has pled that Defendants sold Plaintiff a toxic loan with predatory terms for their financial gain with reckless disregard to Plaintiff's rights.  (FAC ¶ 97.)  Thus, the Court should deny the moving Defendants' Motion to Strike Punitive Damages.

Plaintiff has alleged violations of RESPA, Business & Professions Code § 17200 et seq., among others, each of which permits recovery of attorneys' fees.  (See, 12 U.S.C. 2605; see also, Krumme v. Mercury Ins. Co.,123 Cal. App. 4th 924, 947-948 (2004).)  Further, attorneys' fees are also potentially recoverable for fraud alleged herein.  Thus, the Court should deny the moving Defendants Motion to Strike Attorneys' Fees.

## IV.

## CONCLUSION

Plaintiff is not contending that he does not owe a debt, only that he does not owe moving Defendants.  Plaintiff simply requests the opportunity to conduct discovery to determine the real parties in interest and the actual amount of debt owed.  Based upon the FAC and the argument set forth herein, Plaintiff respectfully requests that  Defendants CHL, BAC, MERS and Recontrust's Motion to Dismiss and Motion to Strike be denied.  In the alternative, should the Court desire more facts be plead, Plaintiff requests leave to amend.

DATED: September 11, 2009                    Respectfully submitted

                                             /s/ Jonathan G. Stein
                                             JONATHAN G. STEIN
                                             Attorney for Plaintiff Tarrance Champlaie

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA     )

                                 )ss.

COUNTY OF SACRAMENTO )

      I am a citizen of the United States and a resident of the County of Sacramento.  I am over the age of 18 years and not a party to the within above-entitled action; my business address is 2882 Prospect Park Dr, Suite 350, California 95670.

      On this date I served the foregoing document described as follows:  **PLAINTIFF'S OPPOSITION TO DEFENDANTS BAC HOME LOAN SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING LP, COUNTRYWIDE HOME LOANS, INC. d/b/a AMERICA'S WHOLESALE LENDER, RECONTRUST COMPANY, N.A., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'s  MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** on the following interested parties in this action:

SEE ATTACHED SERVICE LIST

      The following is the procedure in which service of this document was effected:

❑     Facsimile, Time: _____ P.M.; Date:

❑     Federal Express, Priority Overnight

❑     United Parcel Service, Next Day Air

❑     United States Mail,

✓     By Electronic Mail - I hereby certify that I electronically transmitted the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the above listed CM/ECF registrants.

      I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California and that this declaration was executed on September 11, 2009 at Sacramento, California.

                     /s/ Letitia Brazier_____
                     LETITIA A. BRAZIER

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

## SERVICE LIST

| | |
|---|---|
| Jonathan W. Garlough<br>Foley & Lardner LLP<br>321 N. Clark Street, Suite 2800<br>Chicago, IL 60654<br>312-832-4500-5702<br>312-832-4700 (fax)<br>jgarlough@foley.com | Federal National Mortgage Association<br>TERMINATED: 07/30/2009<br>(Defendant) |
| William J. McKenna, PHV<br>Foley and Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60654<br>312-832-4500<br>312-832-4700 (fax)<br>wmckenna@foley.com | Federal National Mortgage Association<br>TERMINATED: 07/30/2009<br>(Defendant) |
| Jill L. Murch<br>Foley & Lardner LLP<br>321 N. Clark Street, Suite 2800<br>Chicago, IL 60654<br>312-832-4500-4522<br>312-832-4700 (fax)<br>jmurch@foley.com | Federal National Mortgage Association<br>TERMINATED: 07/30/2009<br>(Defendant) |
| Eileen R. Ridley<br>Foley & Lardner LLP<br>One Maritime Plaza<br>Sixth Floor<br>San Francisco, CA 94111<br>415-438-6469<br>eridley@foley.com | Federal National Mortgage Association<br>TERMINATED: 07/30/2009<br>(Defendant) |
| Bill James Symes<br>Foley & Lardner, LLP<br>One Maritime Plaza<br>6th Floor<br>San Francisco, CA 94111<br>415-984-9860<br>415-434-4507 (fax)<br>bsymes@foley.com | Federal National Mortgage Association<br>TERMINATED: 07/30/2009<br>(Defendant) |
| David Nathan de Ruig<br>Bryan Cave LLP<br>2 Embarcadero Center<br>Suite 1410 | San Francisco, CA 94111<br>415-675-3409<br>415-675-3434 (fax)<br>david.deruig@bryancave.com |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1

BAC Home Loans Servicing, LP
(Defendant)

2

Countrywide Home Loans Inc
(Defendant)

3

Mortgage Electronic Registration Systems,
Inc.

4

(Defendant)

5

Recontrust Company
(Defendant)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE