UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TARRANCE CHAMPLAIE,

        NO. CIV. S-09-1316 LKK/DAD

        Plaintiff,

   v.

           O R D E R

BAC HOME LOANS SERVICING, LP,
et al.,

        Defendants.

_____/

    This case concerns plaintiff's mortgage and the potential foreclosure premised on an asserted default. Plaintiff's first amended complaint ("FAC") names eight defendants and ten causes of action, many of which incorporate multiple theories of liability. Four defendants have moved to dismiss all claims against them, and to strike portions of the FAC.

    Stepping back from the multitude of particular arguments, defendants' primary challenge is that plaintiff fails to provide the notice as to the basis of his claims that is required by the Supreme Court's recent decisions in <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937 (2009) and <u>Bell Atlantic v. Twombly</u>, 550 U.S.

544 (2007).  Defendants' motion therefore compels the court to discuss these two cases in the context of the foreclosure cases currently flooding the district courts.  As explained below, the court concludes that in numerous ways, plaintiff's complaint falls short of these requirements established by those cases.

A second broad issue is plaintiff's attempt to cure these deficiencies in his opposition memorandum.  Many claims in the complaint are mere blanket allegations of wrongdoing.  Plaintiff's opposition attempts to salvage these claims by connecting them to factual allegations in ways not made clear by the complaint, and by alleging altogether new facts.  New factual allegations are disregarded in this order.  While post-hoc explanations of the claims' bases are also insufficient, the court discusses what would result from including these explanations in an amended complaint to the extent that the parties' briefing permits the court to do so.  Plaintiff's counsel has filed essentially the same complaint in over two dozen cases in this district, and similar memoranda in opposition to motions to dismiss in each case.  Most, if not all, of these cases are shambling through a slow process of curing the complaints' many deficiencies.  Where parties in this case have briefed issues likely to be raised in an amended complaint, the court finds that a discussion of those issue serves the interests of the parties and the court.

The court resolves these motions on the papers and after oral argument.  For the reasons stated below, defendants' motion to dismiss are granted in part and denied in part, and the motion to

1   strike is denied.

2                           **I. STANDARDS**[1]

3   **A.    Standard for a Motion to Dismiss under Fed. R. Civ. P.**

4         **12(b)(6)**

5        A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's

6   compliance with the pleading requirements provided by the Federal

7   Rules.  In general, these requirements are established by Fed. R.

8   Civ. P. 8, although claims that "sound[] in" fraud or mistake must

9   meet the requirements provided by Fed. R. Civ. P. 9(b).  <u>Vess v.</u>

10  <u>Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

11       **1.    Dismissal of Claims Governed by Fed. R. Civ. P. 8**

12       Under Federal Rule of Civil Procedure 8(a)(2), a pleading must

13  contain a "short and plain statement of the claim showing that the

14  pleader is entitled to relief."  The complaint must give defendant

15  "fair notice of what the claim is and the grounds upon which it

16  rests."  <u>Twombly</u>, 550 U.S. at 555 (internal quotation and

17  modification omitted).

18       To meet this requirement, the complaint must be supported by

19  factual allegations.  <u>Iqbal</u>, 129 S. Ct. at 1950.  "While legal

20  conclusions can provide the framework of a complaint," neither

21  legal conclusions nor conclusory statements are themselves

22  sufficient, and such statements are not entitled to a presumption

23

24       [1] In this case, where the parties' primary dispute is whether
    the allegations contained in the complaint are conclusory, the
25  court finds it appropriate to discuss the standards by which the
    court evaluates these allegations before turning to the allegations
26  themselves.

1  of truth.  Id. at 1949-50.  Iqbal and Twombly therefore proscribe

2  a two step process for evaluation of motions to dismiss.  The court

3  first identifies the non-conclusory factual allegations, and the

4  court then determines whether these allegations, taken as true and

5  construed in the light most favorable to the plaintiff, "plausibly

6  give rise to an entitlement to relief."  Id.; Erickson v. Pardus,

7  551 U.S. 89 (2007).[2]

8      "Plausibility," as it is used in Twombly and Iqbal, does not

9  refer to the likelihood that a pleader will succeed in proving the

10 allegations.  Instead, it refers to whether the non-conclusory

11 factual allegations, when assumed to be true, "allow[] the court

12 to draw the reasonable inference that the defendant is liable for

13 the misconduct alleged."  Iqbal, 129 S.Ct. at 1949. "The

14 plausibility standard is not akin to a 'probability requirement,'

15 but it asks for more than a sheer possibility that a defendant has

16 acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 557).  A

17 complaint may fail to show a right to relief either by lacking a

18 cognizable legal theory or by lacking sufficient facts alleged

19 under a cognizable legal theory. Balistreri v. Pacifica Police

20 Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

21     The line between non-conclusory and conclusory allegations is

22

23     [2] As discussed below, the court may consider certain limited
   evidence on a motion to dismiss.  As an exception to the general
24 rule that non-conclusory factual allegations must be accepted as
   true on a motion to dismiss, the court need not accept allegations
25 as true when they are contradicted by this evidence. See Mullis v.
   United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987),
26 Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

not always clear.   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).   While Twombly was not the first case that directed the district courts to disregard "conclusory" allegations, the court turns to Iqbal and Twombly for indications of the Supreme Court's current understanding of the term.   In Twombly, the Court found the naked allegation that "defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another,'" absent any supporting allegation of underlying details, to be a conclusory statement of the elements of an anti-trust claim. Id. at 1950 (quoting Twombly, 550 U.S. at 551).   In contrast, the Twombly plaintiffs' allegations of "parallel conduct" were not conclusory, because plaintiffs had alleged specific acts argued to constitute parallel conduct. Twombly, 550 U.S. at 550-51, 556.

Twombly also illustrated the second, "plausibility" step of the analysis by providing an example of a complaint that failed and a complaint that satisfied this step.   The complaint at issue in Twombly failed.   While the Twombly plaintiffs' allegations regarding parallel conduct were non-conclusory, they failed to support a plausible claim. Id. at 566.   Because parallel conduct was said to be ordinarily expected to arise without a prohibited agreement, an allegation of parallel conduct was insufficient to support the inference that a prohibited agreement existed. Id.

1  Absent such an agreement, plaintiffs were not entitled to relief.

2  Id.[3]

3      In contrast, Twombly held that the model pleading for

4  negligence demonstrated the type of pleading that satisfies Rule

5  8.  Id. at 565 n.10.  This form provides "On June 1, 1936, in a

6  public highway called Boylston Street in Boston, Massachusetts,

7  defendant negligently drove a motor vehicle against plaintiff who

8  was then crossing said highway."  Form 9, Complaint for Negligence,

9  Forms App., Fed. Rules Civ. Proc., 28 U.S.C. App., p 829.  These

10  allegations adequately "'state[] . . . circumstances, occurrences,

11  and events in support of the claim presented.'" Twombly, 550 U.S.

12  at 556 n.3 (quoting 5 C. Wright & A. Miller, Federal Practice and

13  Procedure § 1216, at 94, 95 (3d ed. 2004)).  The factual

14  allegations that defendant drove at a certain time and hit

15  plaintiff render plausible the conclusion that defendant drove

16  negligently.

17      **2.   Dismissal of Claims Governed by Fed. R. Civ. P. 9(b)**

18      A Rule 12(b)(6) motion to dismiss may also challenge a

19  complaint's compliance with Fed. R. Civ. P. 9(b).  See Vess, 317

20  F.3d at 1107.  This rule provides that "In alleging fraud or

21  mistake, a party must state with particularity the circumstances

22  constituting fraud or mistake.  Malice, intent, knowledge, and

23  _____

24      [3] This judge must confess that it does not appear self-evident
that parallel conduct is to be expected in all circumstances and
25  thus would seem to require evidence.  Of course, the Supreme Court
has spoken and thus this court's own uncertainty needs only be
26  noted, but cannot form the basis of a ruling.

other conditions of a person's mind may be alleged generally." These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (quoting <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" <u>Id.</u> at 765 (quoting <u>Moore v. Kayport Package Express</u>, 885 F.2d 531, 541 (9th Cir. 1989)). Claims subject to Rule 9(b) must also satisfy the ordinary requirements of Rule 8.

**B.    Standard for a Motion to Strike under Fed. R. Civ. P. 12(f)**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." A party may bring on a motion to strike within 20 days after the filing of the pleading under attack. The court, however, may make appropriate orders to strike under the rule at any time on its own initiative. Thus, the court may consider and grant an untimely motion to strike where it is proper to do so. <u>See</u> 5A Wright and Miller, <u>Federal Practice and Procedure: Civil 2d</u> § 1380.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. <u>Id.</u>; <u>see</u> <u>also</u> <u>Hanna v. Lane</u>, 610 F. Supp. 32, 34 (N.D. Ill. 1985). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to

strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. See 5A Wright & Miller, supra, at § 1380.

## II. BACKGROUND

**A. Exhibits**

The parties' filings in connection with the motion have included numerous exhibits. There are three types of evidence which a court may properly consider on a motion to dismiss. The first consists of exhibits attached to the complaint. No such exhibits are present here. The second is evidence subject to judicial notice under Fed. R. Evid. 201. Exhibits B, D, E, F, G, H, and I to Defendants' Request for Judicial Notice ("Defs.' RFJN") are all publicly recorded documents as to which judicial notice is proper. Respectively, these documents are the Deed of Trust; the May 29, 2008 Notice of Default; the September 5, 2008 Notice of Trustee's Sale; the October 29, 2008 Trustee's Deed Upon Sale; the Notice of Rescission of Trustee's Deed Upon Sale; the March 26, 2009 Notice of Trustee's Sale; and the Substitution of Trustee.

The third type of evidence a court may consider consists of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119, 1124 (9th Cir. 2002). This rule serves to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are

based."   <u>Swartz</u>, 476 F.3d at 763 (internal quotation and modification omitted).

The <u>Branch</u> rule encompasses several documents as to which the parties seek judicial notice, but for which judicial notice is improper because the documents are not publicly recorded or otherwise verifiable.  Exhibit A to Defs.' RFJN is the promissory note for plaintiff's loan.  This document is extensively referenced by the FAC.  Defendants also ask the court to consider a "Truth in Lending Disclosure Statement" and "Mortgage Insurance Disclosure." Defs.' RFJN Ex. C; Defendant's Supplemental Request for Judicial Notice, Ex. J.  While the FAC does not refer to either of these documents by name, the FAC repeatedly refers to "documents" provided to plaintiff at closing, <u>see, e.g.</u>, FAC ¶¶ 27, 29, and to various disclosures, <u>see, e.g.</u>, FAC ¶ 62.  The first exhibit to plaintiff's request for judicial notice, a monthly statement sent by CHL dated March 1, 2009, is similarly referred to by the complaint.  Thus, these four documents' contents are alleged in the complaint.  Neither party has questioned the authenticity of any of these four documents.  Notably, plaintiff's opposition memo cites to, and affirmatively relies upon, the exhibits offered by defendant, demonstrating that plaintiff agrees that these exhibits are authentic.  The court may therefore consider these documents without transforming the motion into a motion for summary judgment.

The court cannot consider the second exhibit to plaintiff's request for judicial notice.  This exhibit is an article purporting to describe defendant MERS in general.  It is neither judicially

1  noticeable nor the type of evidence contemplated by <u>Branch</u>, and is

2  therefore ignored.

3  **B.    Plaintiff's Loan and Mortgage[4]**

4        In April of 2007, Jake Weathers, a loan officer employed by

5  Ron Allen & Associates Real Estate, solicited plaintiff to enter

6  a loan transaction.   FAC ¶ 23.   Weathers advised plaintiff that

7  Weathers could secure the "best deal" and "best interest rates"

8  available, that loan payments would be "approximately $1600 per

9  month," and that the loan could be refinanced if the payments

10  became unaffordable.   FAC ¶¶ 25, 26, 28.   After this solicitation,

11  plaintiff retained "Ron Allen & Associates Real Estate, Ronnie D

12  Allen, and Jake Weathers as agents for the purpose of obtaining

13  a loan to finance the property."   FAC ¶ 93.   Plaintiff names Ron

14  Allen & Associates Real Estate and Ronnie D Allen as defendants in

15  this suit, but these defendants are not parties to the instant

16  motion.   Jake Weathers was named as a defendant in the initial

17  complaint, but has been dismissed by plaintiff in the FAC, in light

18  of a bankruptcy filing by Weathers.   FAC ¶ 13.

19        Plaintiff completed the loan transaction between July 25 and

20  August 3, 2007.   FAC ¶ 31.   In so doing, plaintiff signed four

21  documents: the promissory note, the deed of trust, the "Truth in

22  Lending Disclosure Statement," and the "Mortgage Insurance

23  Disclosure."   Defs.' RFJN Ex. A, B, C, J.   The promissory note

24  

25        [4] Many of the following facts are drawn from the FAC.   Unless
    otherwise noted, the court assumes, for the purposes of this motion
26  only, that the facts alleged in the FAC are true.

1  states that plaintiff borrowed $256,500.00 in principal from

2  defendant Countrywide Home Loans, Inc., d/b/a America's Wholesale

3  Lender ("CHL"). Defs.' RFJN Ex. A. The note specifies that

4  plaintiff's "monthly payment will be in the amount of $1,859.90."

5  Id. The note is dated July 25, 2007. Id.

6      The deed of trust identifies defendant CHL as the lender and

7  defendant ReconTrust Company, N.A. ("ReconTrust") as a trustee.

8  Defs.' RFJN Ex. B, 2; see also FAC ¶ 31. The deed further

9  identifies defendant Mortgage Electronic Registration Systems

10  ("MERS") as the beneficiary to the trust, "acting solely as nominee

11  for" the lender and the lender's successors and assigns. Defs.'

12  RFJN Ex. B, 2. The deed of trust obliges plaintiff to secure, and

13  pay the premiums for, "mortgage insurance" in addition to the

14  obligation to pay the loan. Id. at 8-10. The deed is dated July

15  25, 2007, was signed and notarized July 26, 2007, and was recorded

16  on August 3, 2007. Id. at 1, 16.

17      The "Truth in Lending Disclosure Statement" is signed by

18  plaintiff and dated July 26, 2007. Defs.' RFJN Ex. C. This

19  document states that the "amount financed" is $254.856.96 and that

20  the "annual percentage rate" is 9.527 percent. It identifies the

21  loan as a fixed rate 30 year loan, and specifies the monthly

22  payments plaintiff will be obliged to make, inclusive of the amount

23  paid for the mandatory mortgage insurance. The disclosure states

24  that plaintiff will make 153 payments of $2,246.69, followed by 206

25  payments of $1,859.80, and one payment at $1,864.24. The "Mortgage

26  Insurance Disclosure" explains that the decrease in the monthly

1    payment obligation occurs because the mortgage insurance will

2    terminate when the borrower has repaid a certain fraction of the

3    loan. <u>See</u> Defs.' Supplemental RFJN Ex. J, 3-4 (explaining various

4    triggers for cancellation of plaintiff's mortgage insurance).

5         Plaintiff concedes that he received the above documents,

6    notwithstanding the FAC's allegation that "When the loan was

7    consummated, Plaintiff did not receive the required disclosures

8    including, but not limited to[,] the TILA disclosure and the

9    required number of copies of the Notice of Right to Cancel stating

10   the date that the rescission period expires." FAC ¶ 40. Elsewhere

11   in the FAC, plaintiff alleges that he did receive some "loan

12   documents," but that he was prevented from reviewing these

13   documents because he did not receive them prior to closing, and

14   that at closing, he was given only a few minutes to sign the

15   various documents, with no explanation as to what they were, and

16   without an opportunity to review them. FAC ¶ 27. In opposing this

17   motion, plaintiff retreats from the former allegation (that he did

18   not receive the disclosures at all), and rests his argument on the

19   latter.[5]  Amended Opp'n, 8. In light of the position taken by

20   _____

21        [5] Moreover, plaintiff explicitly relies on the Truth in
     Lending Disclosure Statement to argue that the disclosures were
22   inadequate. Specifically, plaintiff argues that the disclosure is
     internally inconsistent, because it states both that plaintiff has
23   a fixed rate loan and that the monthly obligation will change at
     two points. As explained above, the first change in payments was
24   adequately explained to be due to the termination of mortgage
     insurance, such that plaintiff would no longer be obliged to pay
25   insurance premiums. The second change, in the amount due on the
     final payment, is simply due to the fact that the total obligation
26   is not divided into perfectly equal monthly payments. Plaintiff's
     allegation that the Truth in Lending Disclosure Statement itself

plaintiff in his opposition, and the fact that plaintiff signed the Truth in Lending Disclosure Statement and Mortgage Insurance Disclosure, the court rejects the allegation that these documents were not provided, but the court assumes to be true the alternative allegation that these documents were disclosed late in the process and with minimal opportunity for review.

As note above, plaintiff also alleges that he never received any disclosures related to his right to rescind the loan. FAC ¶ 40, see also, e.g., FAC ¶¶ 56-58, 64, 68. Because plaintiff's loan is a "residential mortgage transaction" as defined in 15 U.S.C. § 1602(w), plaintiff had no right to rescind the loan under the Truth in Lending Act ("TILA"), and no disclosures regarding rescission were required. 15 U.S.C. § 1635(e)(1). Plaintiff concedes this point. Amended Opp'n at 10. Because plaintiff had no right to rescind, the allegation that defendants did not inform plaintiff that he had a right to rescind is irrelevant.[6]

---

reveals that the loan was other than a fixed rate loan is therefore without merit.

[6] Accordingly, although plaintiff's FAC explicitly states a TILA claim for rescission, this claim is meritless, has been abandoned, and is not further discussed by the court. In plaintiff's amended opposition, he argues that he is separately entitled to rescission under a state law theory. The FAC, in enumerating the remedies sought under the various claims, does not list rescission as a remedy for any claim other than the TILA claim. In light of the sprawling, "shotgun" nature of the claims actually included in the FAC, the court declines to speculate on the potential validity of claims plaintiff has not alleged, including a claim for rescission under state law. As discussed below, plaintiff is granted leave to amend the complaint. Plaintiff's amendment may allege a theory for rescission under state law if consistent with his allegation of facts.

1    In a final allegation relating to the initial transaction,
2  plaintiff alleges that because he was prevented from reviewing loan
3  documents prior to closing, plaintiff did not discover that
4  Weathers has falsified plaintiff's loan application by inflating
5  plaintiff's monthly income.  FAC ¶ 27.  CHL allegedly "negligently
6  failed to discover" this inaccuracy.  Id.

7  **C.   Events After Initiation of Plaintiff's Loan**

8    Plaintiff has not alleged how defendant BAC Home Loans
9  Servicing, f/k/a Countrywide Home Loans Servicing, ("BAC") became
10 involved in plaintiff's loan, and the parties' exhibits do not
11 explicitly address BAC's role.  It appears, however, that BAC
12 became the "servicer" of plaintiff's loan after the transaction was
13 completed.

14   Plaintiff alleges that when he began making payments on the
15 loan, the monthly obligation "turned out to be" over $2,600,
16 increasing to over $2,900 per month by March 2009.  FAC ¶ 26, see
17 also Pl.'s RFJN Ex. 1 (bill showing payment due for March 1, 2009
18 as $2,979.37).  Plaintiff alleges that this increase demonstrates
19 that either the initial disclosures did not reflect the loan
20 actually sold to plaintiff, or alternatively that the initial
21 disclosures were correct but that defendants have breached their
22 terms.

23   At some point after the loan was initiated, plaintiff failed
24 to make the payments required of him.  Defendant RetconTrust, the
25 trustee under the deed of trust, initiated a nonjudicial
26 foreclosure.  See Cal. Civ. Code § 2924.  ReconTrust issued a

Notice of Default on the loan, which was recorded on May 29, 2008. FAC ¶ 43, Defs.' RFJN Ex. D. This notice stated that plaintiff was $18,587.76 behind on his payments. ReconTrust executed a Notice of Trustee's Sale, the next step in the non-judicial foreclosure process, and recorded this notice on September 5, 2008.[7] FAC ¶ 44, Defs.' RFJN Ex. E. ReconTrust then foreclosed on the property on October 23, 2008, selling the property to the Federal National Mortgage Association. Defs.' RFJN Ex. F; see also FAC ¶ 46 (alleging that foreclosure occurred "on or about October 26, 2008").

ReconTrust rescinded this foreclosure sale roughly three weeks later, on November 12, 2008, and thereby returned the property to plaintiff. FAC ¶ 46. The stated purpose of this rescission was a "failure to communicate timely[] notice of conditions." Defs.' RFJN Ex. G. Plaintiff alleges that no further notice of default or notice of trustee sale was executed. However, the judicially noticeable exhibits demonstrate that a second Notice of Trustee's

---

[7] Plaintiff alleges that after this initial notice of trustee's sale was recorded, plaintiff engaged "Defendant Brett Roberts who represented himself as working for Defendant Planned Resources, a foreclosure rescue company," in an effort to halt foreclosure. FAC ¶ 45. This effort was apparently unsuccessful, and does not appear to be relevant to the motions under consideration.

It is unclear whether plaintiff intends for Brett Roberts and Planned Resources to be defendants in this suit. Plaintiff named both as defendants in the caption to plaintiff's original complaint, but plaintiff omitted their names in the caption to the FAC. Similarly, these individuals are not discussed in the "Parties" section of the FAC. FAC ¶¶ 7-16. The court therefore assumes that references to these individuals as "defendants" are in error.

Sale was recorded on March 26, 2009.  Defs.' RFJN Ex. H.  Although this second Notice of Trustee's Sale stated that the property would be sold on April 14, 2009, no evidence or allegation indicates that a second sale occurred.

Plaintiff alleges that throughout this time, various communications and misrepresentations were directed to plaintiff by various defendants.  Many of these allegations, however, are conclusory.  Plaintiff alleges that "Defendants misrepresented material facts with the intent of forcing Plaintiff to either pay large sums of money to the Defendants, to which they were not entitled, or to abandon the Property to a foreclosure sale, resulting in profit for the Defendants."  FAC ¶ 51.  This allegation fails to identify any "occurrences" or "events," Twombly, 550 U.S. at 556 n.3, including which defendant made the representations, when, or the content of the representation.[8]  This allegation is therefore conclusory, and the court does not discuss it further.

Plaintiff sent a letter to defendant BAC on April 9, 2009, requesting rescission of the loan under TILA.  FAC ¶ 33.  Plaintiff alleges that this letter constituted a "qualified written request"

_____

[8] In plaintiff's opposition memorandum, plaintiff alleges that BAC made misrepresentations in phone calls and letters to plaintiff "immediately after Plaintiff defaulted."  Amended Opp'n at 11. While plaintiff's opposition cites paragraph 51 of the FAC in purported support of this assertion, that paragraph, as discussed above, makes no such allegation.  As discussed below, plaintiff is granted leave to file a second amended complaint, and the court does not find it appropriate to speculate as to the effect of allegations that plaintiff may add through such an amendment.

1    under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601

2    et seq. ("RESPA").  A "qualified written request" is a request "for

3    information relating to the servicing of [federally regulated

4    mortgage loans]."  12 U.S.C. § 2605(a)(1)(A).  The allegation that

5    plaintiff's letter constituted a qualified written request is

6    conclusory, and plaintiff has not alleged that this letter, in

7    addition to seeking to rescind the loan, requested information

8    related to servicing.  See MorEquity Inc. v. Naeem, 118 F. Supp.

9    2d 885, 901 (N.D. Ill. 2000).[9]

10   **D.   Secondary Mortgage Markets, Securitization, and Assignment of**

11   **Plaintiff's Loan**

12        Plaintiff also makes numerous assertions concerning the

13   mortgage lending industry generally rather than conduct specific

14   to this case.  Plaintiff's FAC and opposition decry the practice

15   of selling mortgages on secondary markets, and in particular the

16   practice of securitizing mortgages.  Plaintiff alleges that MERS

17   was created to circumvent laws that would limit these practices.

18   FAC ¶ 19.  Plaintiff separately alleges that lenders lowered

19   underwriting standards to fuel the secondary market.  FAC ¶ 21.

20   The relevance of these allegations has not been explained.

21        Here, defendants did not acquire plaintiff's loan through the

22   secondary market.  According to plaintiff's own allegations, CHL,

23   _____

24        [9] Plaintiff's amended opposition states that plaintiff's
     letter also requested "documents relating to the servicing of
     Plaintiff's loan . . . and a statement of the reasons for
25   Plaintiff's belief that his loan is in error."  Amended Opp'n, 15.
     Again, the issue tendered by the motion addresses the present state
26   of the pleadings, not what an amended complaint might state.

1   MERS, and ReconTrust were the parties to the original transaction,

2   although plaintiff alleges that MERS was not entitled to act as

3   such.  FAC ¶¶ 31, 32, 38.  The exhibits considered by the court

4   confirm that these three defendants were party to the original

5   transaction.  See, e.g., Defs.' RFJN Ex. B.  Notwithstanding these

6   allegations, Plaintiff alleges without further explanation that

7   "[n]o interest in the Mortgage Note, Deed of Trust, or Property was

8   ever legally transferred to any of the Defendants," because

9   defendants "failed to follow the basic legal requirements for the

10  transfer of a negotiable instrument and an interest in real

11  property," and that as a result "Defendants are in effect legal

12  strangers to this contractual transaction."  FAC ¶¶ 19, 20.  The

13  court cannot countenance these latter allegations insofar as they

14  imply that defendants' interests were acquired only by assignment

15  from entities other than plaintiff, because this implication is

16  contradicted by the exhibits considered by the court, the position

17  taken by plaintiff in opposition to this motion, and by plaintiff's

18  factual allegations as to the role of the parties.[10]

19      Separate from the allegation that the loan was assigned *to*

20  defendants, plaintiff alleges that defendants have assigned the

21  loan to other parties.  Plaintiff alleges that "Defendants sold .

22  . . Plaintiff['s] home loan . . . to other financial entities," and

23  that as a result, "Defendants do not own the loan subject to this

24  _____

25      [10]  While it is true that the federal rules tolerate
    contradictory allegations, the present complaint cannot reasonably
    be construed as such a pleading.  See Coleman v. Std. Life Ins.
26  Co., 288 F. Supp. 2d 1116, 1119 (E.D. Cal. 2003).

1   action [sic] and are not entitled to enforce the security

2   interest." FAC ¶ 34.[11] Plaintiff's allegation that defendants

3   "are not entitled to enforce the security interest" is a legal

4   conclusion not entitled to an assumption of truth. The exhibits

5   establish that neither MERS nor ReconTrust have assigned or

6   transferred their interests and obligations under the deed of

7   trust, and plaintiff has not alleged that any such assignment or

8   transfer as to the deed of trust has occurred. Associated General

9   Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 526

10  (1983) (courts shall not assume that plaintiffs may prove facts

11  they have not alleged). Because the exhibits do not speak to

12  whether CHL has assigned the beneficial interest under the

13  promissory note, and because plaintiff alleges that this note was

14  transferred, the court must at this stage assume this allegation

15  to be true.

16  **E.   MERS**

17  Plaintiff's remaining factual allegations concern challenges

18  to three aspects of MERS's operation. First, he alleges that the

19  practice of designating MERS as the nominee for the real party in

20  interest on a deed of trust has the purpose and effect of

21  subverting state recording and notice requirements. FAC ¶¶ 19, 32.

22  This allegation is invoked only to support plaintiff's "produce the

23  _____

24       [11] However, as noted above, plaintiff also alleges that all
    attempted assignments suffered procedural defects and were
25  therefore ineffective. FAC ¶ 19. The court assumes that the
    allegation of defects (which is itself a legal conclusion) is
26  brought in the alternative.

1  note" argument, and is not otherwise explained or supported by

2  factual allegations.  Second, plaintiff alleges that MERS is not

3  licensed to conduct business in California.  FAC ¶ 32. Third,

4  plaintiff alleges that MERS's own "terms and conditions" prohibit

5  MERS from asserting rights to mortgaged properties, FAC ¶ 10, and

6  that this prohibits MERS from foreclosing on properties, FAC ¶¶ 11,

7  32.

8  **III. ANALYSIS**

9  **A.   Preliminary Issues**

10      **1.     Preemption of Plaintiff's State Law Claims**

11      The extent to which federal law preempts state law claims

12  relating to mortgage lending is unclear.  TILA includes a broad

13  "savings clause" that limits TILA's preemptive effect. 15 U.S.C.

14  § 1610.  However, the Office of Thrift Supervision has promulgated

15  a regulation under the Home Owners Loan Act, 12 U.S.C. § 1461 that

16  purports to preempt "the entire field of lending regulation for

17  federal savings associations."  12 C.F.R. § 560.2(a).  The Ninth

18  Circuit upheld this regulation in Silvas v. E*Trade Mortg. Corp.,

19  514 F.3d 1001 (9th Cir. 2008).  In Silvas, plaintiffs brought

20  claims under California's Unfair Competition Law, Cal. Bus. and

21  Prof. Code section 17200 et seq., ("UCL") arguing that defendant

22  had advertised that certain payments where non-refundable when TILA

23  required that defendant make a refund available.  Silvas, 514 F.3d

24  at 1003.  The panel held that plaintiffs' claims were preempted by

25  the OTS's HOLA regulation.  Id. at 1005 (citing 12 C.F.R. § 560.2).

26  This result was based on the conclusion that plaintiffs sought to

1  use the UCL to directly regulate credit activities.  Id. at 1006

2  (applying 12 C.F.R. § 560.2(b)).  The panel then stated that while

3  it "[did] not reach the question" of whether plaintiffs'

4  application of the UCL would be preempted as a law that only

5  incidentally affected credit activities, but that if the panel were

6  to reach the question, it would hold that the UCL was preempted

7  insofar as it provided a longer statute of limitations than TILA.

8  Id. at 1006-07, 1007 n.3.

9      District courts have differed in their application of Silvas

10  to subsequent foreclosure cases.  Several courts have read

11  Silvas to have held that numerous state law claims were preempted

12  in their entirety.  Naulty v. Greenpoint Mortg. Funding, Inc., No.

13  C 09-1542, 2009 U.S. Dist. LEXIS 79250, *10-*12 (N.D. Cal. Sept.

14  2, 2009) (Patel, J.), Kelley v. Mortgage Elec. Registration Sys.,

15  No. C 09-01538, 2009 U.S. Dist. LEXIS 70796, *11-*12 (N.D. Cal.

16  Aug. 12, 2009) (Ikuta, J.).  Others have read Silvas for the narrow

17  proposition that the UCL may not be used to extend TILA's statute

18  of limitations.  Santos v. Countrywide Home Loans, 2009 U.S. Dist.

19  LEXIS 71736 (E.D. Cal. Aug. 14, 2009) (Ishii, J.).

20      In this case, defendants cite Silvas solely for the

21  proposition that the UCL may not be used to extend TILA's statute

22  of limitations--that is, that if the UCL claim is predicated upon

23  a violation of TILA, the UCL claim must be brought within TILA's

24  limitations period.  Silvas spoke to this specific issue in detail.

25  Silvas, 514 F.3d at 1007 n.3.  While this discussion is explicitly

26  demarcated as dicta, it is dicta that this court does not disregard

1  lightly.  See United States v. Montero-Camargo, 208 F.3d 1122, 1133

2  n.17 (9th Cir. 2000) (discussing the weight accorded to dicta of

3  a reviewing court).  There being no adverse reasoning, the court

4  follows Silvas on this issue.

5      Because preemption is largely a defense, and because

6  defendants have only invoked preemption on the above issue, the

7  court does not discuss whether plaintiff's state law claims are

8  otherwise preempted.  See Moore-Thomas v. Alaska Airlines, Inc.,

9  553 F.3d 1241, 1244 (9th Cir. 2009) (in the context of removal

10 jurisdiction, labeling preemption as "federal law defense to a

11 state-law claim.")

12     **2.   MERS's Authority to Operate in California**

13     The FAC fleetingly alleges that "MERS [is] not registered to

14 do business in California."  FAC ¶ 9.  While MERS's registration

15 status receives no other mention in the complaint, plaintiff's

16 opposition memorandum purports to support several of plaintiff's

17 claims with this allegation, and defendant's reply discusses it on

18 the merits.  The court therefore discusses this issue here.

19     The California Corporations Code requires entities that

20 "transact[] intrastate business" in California to acquire a

21 "certificate of qualification" from the California Secretary of

22 State.  Cal. Corp. Code § 2105(a).  MERS argues that its activities

23 fall within exceptions to the statutory definition of transacting

24 intrastate business, such that these requirement does not apply.

25 See Cal. Corp. Code § 191.  It is not clear to the court that

26 MERS's activity is exempt.

1    MERS primarily relies on Cal. Corp. Code § 191(d)(3).  Cal.

2    Corp. Code § 191(d) enumerates various actions that do not trigger

3    the registration requirement when performed by "any foreign lending

4    institution."  Because neither the FAC nor the exhibits indicate

5    that MERS is such an institution, MERS cannot protect itself under

6    this exemption at this stage.  The statute defines "foreign lending

7    institution" as "including, but not limited to: [i] any foreign

8    banking corporation, [ii] any foreign corporation all of the

9    capital stock of which is owned by one or more foreign banking

10   corporations, [iii] any foreign savings and loan association, [iv]

11   any foreign insurance company or [v] any foreign corporation or

12   association authorized by its charter to invest in loans secured

13   by real and personal property[.]"  Cal. Corp. Code § 191(d).

14   Neither any published California decision nor any federal decision

15   has interpreted these terms.  Because plaintiff alleges that MERS

16   does not itself invest in loans or lend money, it appears that [i],

17   [iii], and [v] do not apply.  MERS does not claim to be an

18   insurance company under [ii].  Finally, it is certainly plausible

19   that not all of MERS's owners are foreign corporations.  At this

20   stage of litigation, the court cannot conclude that MERS falls

21   within any of the five enumerated examples of "foreign lending

22   institutions," and the court declines to address sua sponte whether

23   MERS otherwise satisfies subsection (d).

24   Defendants also invoke a second exemption, Cal. Corp. Code §

25   191(c)(7).  While section 191(c) is not restricted to "lending

26   institutions," MERS's acts do not fall into the categories

1  enumerated under the section, including subsection (c)(7).

2  Plaintiff alleges that MERS directed the trustee to initiate non-

3  judicial foreclosure on the property.  Section 191(c)(7) provides

4  that "[c]reating evidences of debt or mortgages, liens or security

5  interests on real or personal property" is not intrastate business

6  activity.  Although this language is unexplained, directing the

7  trustee to initiate foreclosure proceedings appears to be more than

8  merely creating evidence of a mortgage.  This is supported by the

9  fact that a separate statutory section, § 191(d)(3) (which MERS

10  cannot invoke at this time, <u>see supra</u>), exempts "the enforcement

11  of any loans by trustee's sale, judicial process or deed in lieu

12  of foreclosure or otherwise."  Interpreting section (c)(7) to

13  include these activities would render (d)(3) surplusage, and such

14  interpretations of California statutes are disfavored under

15  California law.  <u>People v. Arias</u>, 45 Cal. 4th 169, 180 (2008),

16  <u>Hughes v. Bd. of Architectural Examiners</u>, 17 Cal. 4th 763, 775

17  (1998).  Accordingly, section 191(c)(7) does not exempt MERS's

18  activity.[12]

19      For these reasons, plaintiff's argument that MERS has acted

20

21  [12] The court notes that two other opinions have concluded, at
    the motion to dismiss stage, that MERS is not required to register
    under Cal. Corp. Code § 2105(a).  <u>Lomboy v. SCME Mortg. Bankers</u>,

22  No. C-09-1160 SC, 2009 WL 1457738, *3 (N.D. Cal. May 26, 2009); <u>see</u>
    <u>also</u> <u>Benham v. Aurora Loan Services</u>, No. C-09-2059, 2009 U.S. Dist.

23  LEXIS 78384, *14 (N.D. Cal. Sept. 1, 2009) (following <u>Lomboy</u>).
    <u>Lomboy</u> held that MERS was exempt under sections 191(c)(1), (c)(7),

24  and (d)(3).  However, the case did not address section (d)'s
    predicate requirement that the entity be a "foreign lending

25  institution," nor did the opinion address whether sections (c)(1)
    and (c)(7) themselves sufficed.  <u>Benham</u> provided no further

26  discussion.

1  in violation of Cal. Corp. Code § 2105(a) is plausible, and cannot

2  be rejected at this stage in the litigation.

3      **3.   Whether MERS Has Acted Ultra-Vires**

4      Plaintiff separately argues that MERS has acted in violation

5  of its own "terms and conditions." These "terms" allegedly provide

6  that

7              MERS shall serve as mortgagee of record with
              respect to all such mortgage loans solely as
8              a nominee, in an administrative capacity, for
              the beneficial owner or owners thereof from
9              time to time. MERS shall have no rights
              whatsoever to any payments made on account of
10             such mortgage loans, to any servicing rights
              related to such mortgage loans, or to any
11             mortgaged properties securing such mortgage
              loans. MERS agrees not to assert any rights
12             (other than rights specified in the Governing
              Documents) with respect to such mortgage loans
13             or mortgaged properties. References herein to
              "mortgage(s)" and "mortgagee of record" shall
14             include deed(s) of trust and beneficiary under
              a deed of trust and any other form of security
15             instrument under applicable state law."

16 FAC ¶ 10. The FAC does not specify the source of these "terms and

17 conditions." Plaintiff's opposition memorandum states that they

18 are taken from MERS's corporate charter, implying that an action

19 in violation thereof would be ultra vires. Opp'n at 4. Plaintiff

20 then alleges that these terms do not permit MERS to "act as a

21 nominee or beneficiary of any of the Defendants." FAC ¶ 32.

22 However, the terms explicitly permit MERS to act as nominee.

23 Plaintiff has not alleged a violation of these terms.

24      **4.   Defendants' Authority to Foreclose**

25      Another theme underlying many of plaintiff's claims is that

26 defendants have attempted to foreclose or are foreclosing on the

1 property without satisfying the requirements for doing so.
2 Plaintiff argues that foreclosure is barred because no defendant
3 is a person entitled to enforce the deed of trust under the
4 California Commercial Code and because defendants failed to issue
5 a renewed notice of default after the initial trustee's sale was
6 rescinded.

7     **a.   Applicability of the California Commercial Code**

8     California Civil Code sections 2924 through 2924l govern non-
9 judicial foreclosures pursuant to a deed of trust.  Non-judicial
10 foreclosure may be initiated by a "trustee, mortgagee, or
11 beneficiary, or any of their authorized agents." Cal. Civ. Code §
12 2924(a)(1).  Plaintiff argues that even when the deed of trust
13 designates a party as a trustee or beneficiary and the party
14 complies with the remaining requirements of sections 2924 through
15 2924l, this is not sufficient to demonstrate that a party has the
16 power to foreclose, because the party must also demonstrate that
17 it is a "person entitled to enforce" the deed of trust under
18 California Commercial Code section 3301.  Plaintiff argues that
19 defendants must therefore "produce the [promissory] note," or at
20 the least, identify the current holder of the note.  The court
21 joins the chorus of opinions holding that California law imposes
22 no such requirement.

23     California Commercial Code sections 3301 through 3312 govern
24 enforcement of negotiable instruments. Plaintiff assumes, without
25 discussion, that the promissory note at issue here is a negotiable
26

instrument as defined by Cal. Comm. Code section 3104.[13]  Section

3301 provides that a negotiable instrument may be enforced by "(a)

the holder of the instrument, (b) a nonholder in possession of the

instrument who has the rights of a holder, or (c) a person not in

possession of the instrument who is entitled to enforce the

instrument pursuant to Section 3309 . . . ."  To be a "holder" of

an instrument for purposes of this section, a party or one of its

agents must be in possession of the instrument.  Cal. Comm. Code

§ 1201(21); see also In re Kang Jin Hwang, 393 B.R. 701, 707

(Bankr. C.D. Cal. 2008) (interpreting Cal. Comm. Code § 3301).

Plaintiff argues that because no defendant has shown that the

requirements of Cal. Comm. Code section 3309 have been met,

defendants must "produce the note" to demonstrate that one of them

possesses it.  FAC ¶¶ 11, 50, 131.

As noted above, California's non-judicial foreclosure process

is governed by a statutory framework that is distinct from the

commercial code, California Civil Code sections 2924 through 2924l.

No California court has discussed whether actual possession of the

promissory note must be demonstrated in a non-judicial foreclosure.

Several dozen federal district courts within California have

---

[13] Although the court does not decide this issue, the court notes that plaintiff's view receives at least some support from other opinions.  Saks v. Charity Mission Baptist Church, 90 Cal. App. 4th 1116, 1132 (2001) ("[A] promissory note is a form of negotiable instrument."), Am. Sec. Bank v. Clarno, 151 Cal. App. 3d 874, 881 (1984) (promissory note may be a negotiable instrument); see also In re Kang Jin Hwang, 393 B.R. at 707 (assuming without deciding that a promissory note satisfied Cal. Comm. Code § 3104).

considered the issue, however, and so far as this court is aware, the district courts have unanimously concluded that in a non-judicial foreclosure, a party need not demonstrate actual possession of the underlying note.  See, e.g., McGrew v. Countrywide Home Loans, Inc., 628 F. Supp. 2d 1237, 1244 (S.D. Cal. 2009), Wood v. Aegis Wholesale Corp., 2009 U.S. Dist. LEXIS 57151, *11-*15 (E.D. Cal. July 2, 2009) (Ishii, J.).

The rationale underlying these district court decisions is that Civil Code sections 2924-2924l establish an exhaustive set of requirements for non-judicial foreclosure, and that production of the note is not one of these requirements.  The California courts have summarized these requirements:

> Upon default by the trustor, the beneficiary may declare a default and proceed with a non-judicial foreclosure sale (Cal. Civ. Code §2924). The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee (Cal. Civ. Code §2924). After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale (Cal. Civ. Code §2924(b)). After the 3 month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale (Cal. Civ. Code §2924f). The trustee may postpone the sale at any time before the sale is completed (Cal. Civ. Code §2924g(c)(1)). If the sale is postponed, the requisite notices must be given (Cal. Civ. Code §2924g(d)). The conduct of the sale, including any postponements, is governed by Civil Code Section 2924g. The property must be sold at public auction to the highest bidder (Cal. Civ. Code §2924g(a)).

Moeller v. Lien, 25 Cal. App. 4th 822, 830 (1994).

Some courts appear to have reasoned that plaintiff's position

would create an explicit conflict with the statute's provisions. The statute authorizes the "trustee, mortgagee, or beneficiary, or any of their authorized agents" to initiate foreclosure. Cal. Civ. Code § 2924(a)(1). Under California Civil Code section 2924(b)(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." Several courts have held that this language demonstrates that possession of the note is not required, apparently concluding that the statute authorizes initiation of foreclosure by parties who would not be expected to possess the note. See, e.g., Spencer v. DHI Mortg. Co., No. 09-0925, 2009 U.S. Dist. LEXIS 55191, *23-*24 (E.D. Cal. June 30, 2009) (O'Neill, J.). However, the precise reasoning of these cases is unclear.[14]

A second argument adopted by sister district courts is that even if requiring possession of the promissory note does not contradict the statute's provisions, it nonetheless extends them, and such extensions are impermissible. See, e.g., Bouyer v. Countrywide Bank, FSB, No. C 08-5583, 2009 U.S. Dist. LEXIS 53940, *23-*24 (N.D. Cal. June 25, 2009). California courts have described the statute as establishing a "comprehensive scheme" for non-judicial foreclosures. Homestead Sav. v. Darmiento, 230 Cal.

---

[14] These courts may be relying on an understanding that neither the trustee or an authorized representative would be in possession of the note. Because this court has no way of knowing that is the case, I respectfully cannot join in that view.

App. 3d 424, 433 (1991)).  Because this scheme "is intended to be exhaustive," California courts have refused to incorporate additional obligations, such as allowing a debtor to invoke a separate statutory right to cure a default.  Moeller, 25 Cal. App. 4th at 834 (refusing to apply Cal. Civ. Code § 3275).  The California Supreme Court has similarly held that "[t]he rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes."  I.E. Associates v. Safeco Title Ins. Co., 39 Cal. 3d 281, 288 (1985).  I.E. Associates held that while a trustee has a statutory duty to contact a trustor at the trustor's last known address prior to non-judicial foreclosure, the Court could not impose a further duty to search for the trustor's actual current address.  Id.  District courts have applied I.E. Associates and Moeller to hold that the trustee's duties are "strictly limited" to those contained specifically in the non-judicial foreclosure statute, section 2924 et seq.  See, e.g., Bouyer v. Countrywide Bank, FSB, 2009 U.S. Dist. LEXIS 53940, *23-*24 (N.D. Cal. June 25, 2009).  These courts have held that because section 2924 does not specify that any party must possess the note, such possession is not required.  Id.  Courts have similarly refused to require a trustee "to identify the party in physical possession of the original promissory note prior to commencing a nonjudicial foreclosure."  Ritchie v. Cmty. Lending Corp., 2009

1  U.S. Dist. LEXIS 73216, *20 (C.D. Cal. Aug. 12, 2009).[15]

2       Finally, while the above arguments have focused on and

3  rejected a requirement of *production* of the note, a series of

4  opinions by Judge Ishii have held that under California law,

5  *possession* of the note is not required either. <u>Garcia v. HomEq</u>

6  <u>Servicing Corp.</u>, 2009 U.S. Dist. LEXIS 77697 *11 (E.D. Cal. Aug.

7  18, 2009), <u>Topete v. ETS Servs., LLC</u>, 2009 U.S. Dist. LEXIS 77761

8  *10-*11 (E.D. Cal. Aug. 18, 2009), <u>Wood v. Aegis Wholesale Corp.</u>,

9  2009 U.S. Dist. LEXIS 57151, *14 (E.D. Cal. July 2, 2009).  These

10  opinions reason as follows.  Under Cal. Civ. Code § 2932.5, when

11  the beneficial interest under the promissory note is assigned, the

12  assignee may exercise a security interest in real property provided

13  that the assignment is "duly acknowledged and recorded."  <u>See,</u>

14  <u>e.g.</u>, <u>Wood</u>, 2009 U.S. Dist. LEXIS 57151 at *14.  The Ninth Circuit

15  has applied California law to hold that promissory notes arising

16  out of real estate loans could be sold without transfer of

17  possession of the documents themselves.  <u>Id.</u> (citing <u>In re Golden</u>

18  <u>Plan of Cal., Inc.</u>, 829 F.2d 705, 707, 708 n.2, 710 (9th Cir.

19  1986)).  Judge Ishii concluded that because a party may come to

20  validly own a beneficial interest in a promissory note without

21  possession of the promissory note itself, and because this

22

23       [15] To say that a trustee's duties are strictly limited does
    not appear to this court to preclude possession of the note as a
24  prerequisite to foreclosure.  On the other hand, perhaps it is not
    unreasonable to suggest that such a prerequisite imposes a
25  nonstatutory duty.

26

1   interest, if recorded on the deed of trust, carries with it the

2   right to foreclose, possession of the promissory note is not a

3   prerequisite to non-judicial foreclosure. <u>Id.</u>

4      Having reviewed the arguments adopted by the district courts,

5   the court is left with the sense that reasonable minds could

6   disagree. Notably, <u>I.E. Associates</u> held that trustee's duties are

7   "strictly limited" to those arising under the "statutes," and a

8   reasonable jurist could conclude that the plural "statutes"

9   incorporates the Commercial Code. Although the Civil Code

10   authorizes a number of parties to initiate nonjudicial foreclosure,

11   it could be that whichever of those parties possesses the note may

12   foreclose.

13      At some point, however, the opinion of a large number of

14   decisions, while not in a sense binding, are by virtue of the sheer

15   number, determinative. I cannot conclude that the result reached

16   by the district courts is unreasonable or does not accord with the

17   law. I further note that this conclusion is not obviously at odds

18   with the policies underlying the California statutes. The apparent

19   purpose of requiring possession of a negotiable instrument is to

20   avoid fraud. In the context of non-judicial foreclosures, however,

21   the danger of fraud is minimized by the requirement that the deed

22   of trust be recorded, as must be any assignment or substitution of

23   the parties thereto. While it may be that requiring production of

24   the note would have done something to limit the mischief that led

25   to the economic pain the nation has suffered, the great weight of

26   authority has reasonably concluded that California law does not

1   impose this requirement.

2       While the court concludes that neither production nor

3   possession is required, the court need not decide whether this is

4   because promissory notes are not "negotiable instruments," or

5   instead because Cal. Civ. Code § 2924 et seq. render the Commercial

6   Code inapplicable. The court leaves that question for the

7   California courts. The court solely concludes that neither

8   possession of the promissory note nor identification of the party

9   in possession is a prerequisite to non-judicial foreclosure.

10              **b.   Compliance with Cal. Civ. Code §§ 2924 - 2924l**

11      Plaintiff alternatively argues that defendants have failed to

12  comply with the procedural requirements imposed by California Civil

13  Code sections 2924 through 2924l. As explained above, before a

14  property can be sold through a non-judicial foreclosure, the

15  trustee or other foreclosing party must record a Notice of Default

16  followed by a Notice of Trustee's Sale. Defendant ReconTrust

17  recorded these two documents, and then conducted a trustee's sale

18  on October 23, 2008. Defs.' RFJN Ex. F. The sale itself was then

19  rescinded. Plaintiff argues that rescission of the sale

20  necessarily also rescinded the antecedent Notice of Default and

21  Notice of Trustee's Sale. Plaintiff offers no authority to support

22  this position, and plaintiff's position is contrary to California

23  law. Rescission of a trustee's deed "restore[s] the condition of

24  record title to the real property described in the trustee's deed

25  and the existence and priority of all lienholders to the status quo

26  prior to the recordation of the trustee's deed upon sale." Cal.

1  Civ. Code § 1058.5(b).  The record of title on the property prior
2  to recordation of the deed upon sale included the notice of default
3  and notice of trustee's sale.  Although ReconTrust recorded a
4  second Notice of Trustee's Sale, there was no requirement to also
5  issue a renewed notice of default.  That is, there appears no
6  reason to believe that rescission of the sale canceled the
7  precedent documents.

8  **B.   Specific Claims**

9          **1.   Truth in Lending Act**

10         Plaintiff's TILA claim seeks civil damages from defendant CHL
11  on the ground that CHL violated TILA's disclosure obligations.[16]
12  Although some of the allegations underlying this claim are
13  conclusory and fail to support a claim, plaintiff alleges a basis
14  for TILA liability that is plausible and that cannot be dismissed
15  as untimely at this stage.

16         Plaintiff generally alleges that CHL violated TILA in that
17  CHL:

18                 (a) fail[ed] to provide required disclosures
                   prior to consummation of the transaction;
19

20                 (b) fail[ed] to make required disclosures
                   clearly and conspicuously in writing;
21

22                 (c) fail[ed] to timely deliver to Plaintiff
                   notices required by TILA;
23

24                 (d) plac[ed] terms prohibited by TILA into the

25  ─────────────────

26         [16] As noted above, plaintiff has conceded that rescission of
    his loan is not available under TILA.

34

1                    transaction; and

2
                     (e) fail[ed] to disclose all finance charge
3                    details and the annual percentage rate based
                     upon properly calculated and disclosed finance
4                    charges and amounts financed.

5   FAC ¶ 62. Two of these allegations, (b) and (d), must be rejected.

6   The "Truth in Lending Disclosure Statement" and "Mortgage Insurance

7   Disclosure" both bear plaintiff's dated signature, the authenticity

8   of which plaintiff does not contest.   Plaintiff therefore

9   ultimately received these documents.   The court accordingly rejects

10  (b) insofar as it alleges that the information contained in these

11  documents was never disclosed.   Allegation (d) is conclusory in

12  that neither it nor anything else in the FAC provide any notice as

13  to what terms, if any, were 'included in the transaction' but

14  prohibited by TILA.

15       The remaining allegations cannot be disregarded, and CHL has

16  not met its burden of explaining how these allegations fail to

17  support a TILA claim.   Although (a) and (c) do not identify

18  specific disclosures, the FAC's other allegations make it clear

19  that plaintiff alleges that he did not receive *any* disclosures in

20  advance of closing.   The exhibits do not conclusively refute this

21  allegation, in that plaintiff's signature on the disclosures and

22  the deed of trust is dated July 26, 2007, and the signature on the

23  promissory note is undated.   CHL has not addressed plaintiff's

24  legal theory that even when written disclosures are provided to and

25  signed by the borrower, these disclosures may not satisfy TILA's

26  disclosure obligations when the borrower is denied an adequate

                              35

opportunity to review them prior to closing. Absent argument on this issue, the court assumes for purposes of this motion that this theory is valid. These allegations therefore state a "plausible" claim for relief.

The final allegation, (e), is partially refuted by the exhibits, in that CHL did state the amount financed, annual percentage rate, or finance charges. See Defs.' RFJN Ex. C. The exhibit does not establish, however, that these statements were accurate. Insofar as plaintiff alleges that CHL failed to disclose accurate information, allegation (e) is not refuted. As discussed above, plaintiff alleges that his monthly payments have increased beyond the amount indicated in these disclosures. FAC ¶ 26.[17] Plaintiff has therefore adequately alleged a claim that disclosure obligations were violated because the disclosures were inaccurate.

CHL separately argues that even if plaintiff adequately alleges a failure to make disclosures required by TILA under any of the above theories, plaintiff's TILA claim is barred by TILA's one year statute of limitations for civil damages claims. 15 U.S.C. § 1640(e). Here, plaintiff's TILA claim arises solely out of failure to make required disclosures at the time the loan was entered, which was on or around July 26, 2007. The limitations period began to run at that time, King v. California, 784 F.2d 910, 914 (9th Cir. 1986), and would normally have expired on July 26,

---

[17] Plaintiff has also provided some evidence to this effect. Pl.'s RFJN Ex. 1.

2008.  Plaintiff's initial complaint was filed May 12, 2009.[18]

This does not end the inquiry, however, because TILA's limitations period for civil damages may be equitably tolled, <u>King</u>, 784 F.2d at 915, and subject to equitable estoppel, <u>Ayala v. World Sav. Bank, FSB</u>, 616 F. Supp. 2d 1007 (C.D. Cal. 2009).  Plaintiff argues that one or both doctrines apply here, because plaintiff did not have "reasonable opportunity to discover" the facts underlying the claim.

Because the statute of limitations is an affirmative defense, its invocation in the context of a motion to dismiss raises specific concerns, especially when the plaintiff raises an equitable tolling or equitable estoppel argument. "Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue." <u>Huynh v. Chase Manhattan Bank</u>, 465 F.3d 992, 1003-04 (9th Cir. 2006) (citing <u>Supermail Cargo, Inc. v. United States</u>, 68 F.3d 1204, 1206 (9th Cir. 1995)).  In light of these concerns, the Ninth Circuit has held that a motion to dismiss on statute of limitations grounds cannot be granted if "the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." <u>Cervantes v. City of San Diego</u>,

---

[18] For purposes of this motion, the court need not determine whether the relevant filing date is the one provided above, which is the date the original complaint was filed, or instead the date for the amended complaint, as defendants argue.

1   5 F.3d 1273, 1277 (9th Cir. 1993); <u>see also</u> <u>Morales v. City of</u>
2   <u>Los Angeles</u>, 214 F.3d 1151, 1153, 1155 (9th Cir. 2000).  Because
3   equitable tolling turns on matters outside of the pleadings, the
4   Supreme Court's recent decisions in <u>Twombly</u> and <u>Iqbal</u>, which
5   concerned the requirements of Fed. R. Civ. P. 8, do not provide
6   reason to revisit this rule.  Although the Ninth Circuit has not
7   discussed the rule since <u>Twombly</u> was decided, other courts have
8   continued to follow it.  <u>Plascencia v. Lending 1st Mortg.</u>, 583
9   F. Supp. 2d 1090, 1098 (N.D. Cal. 2008), <u>Nava v. Virtualbank</u>,
10  2008 U.S. Dist. LEXIS 72819 (E.D. Cal. July 16, 2008) (Damrell,
11  J); <u>see also</u> <u>USPPS, Ltd. v. Avery Dennison Corp.</u>, 2009 U.S. App.
12  LEXIS 13076 (5th Cir. Tex. June 17, 2009) (unpublished Fifth
13  Circuit decision applying a similar rule).

14      In applying this rule to non-TILA cases, the Ninth Circuit
15  has held that dismissal was appropriate where "it [was] clear
16  that [plaintiffs] have had the information necessary to bring
17  suit . . . for many years," and plaintiffs did not argue that
18  "extraordinary circumstances beyond [their] control made it
19  impossible to file the claims on time." <u>Lien Huynh</u>, 465 F.3d at
20  1004.  Conversely, dismissal was inappropriate where plaintiff
21  alleged both "that it did not discover" the defendant's alleged
22  wrongdoing until soon before the claim was filed and that
23  plaintiff's "failure to discover the [wrongdoing] earlier was not
24  due to [plaintiff's] lack of diligence, but rather to the
25  [defendant]'s deliberate failure to provide [plaintiff] with
26  accurate information." <u>Supermail Cargo</u>, 68 F.3d at 1208; <u>see</u>

1  also Cervantes, 5 F.3d at 1277 (reversing dismissal).

2      Here, insofar as plaintiff's TILA claim is based on the

3  allegation that the required disclosures were not made prior to

4  completion of the transaction, it is clear that plaintiff knew

5  all the pertinent facts throughout the limitations period.

6  Plaintiff admits receiving the disclosures; he merely argues that

7  they should have been made earlier.  Plaintiff was well aware of

8  the fact that he did not receive the disclosures at an earlier

9  time.  Nor has plaintiff identified any potential barrier to

10  bringing suit on this issue prior to now.  Under Lien Huynh,

11  dismissal on statute of limitations grounds is appropriate as to

12  this basis for plaintiff's TILA claim.  465 F.3d at 1004.

13      Insofar as plaintiff's TILA claim is based on the allegation

14  that the disclosures contained inaccurate information, however,

15  the court cannot determine when plaintiff learned of these

16  inaccuracies, and the court therefore cannot conclude that there

17  is no potential for equitable tolling.  Cervantes, 5 F.3d at

18  1277.  It may be that plaintiff could not and did not discover

19  that this information was inaccurate until his monthly bills

20  increased, and that the statute tolled for a period sufficient

21  to render this claim timely.

22      **2.   Real Estate Settlement Procedures Act**

23      Plaintiff brings RESPA claims against CHL and BAC.

24  Plaintiff alleges that CHL (together with Ron Allen & Associates

25  Real Estate and Ronnie D Allen) "violated RESPA at the time of

26  closing on the sale of the Property by failing to correctly and

1  accurately comply with the disclosure requirements provided

2  therein." FAC ¶ 86. This allegation is conclusory in that it

3  fails to identify what information, if any, CHL failed to

4  disclose or CHL inaccurately disclosed.[19]

5      Plaintiff alleges that BAC violated RESPA by failing to

6  respond to a "qualified written request" under RESPA.[20]  As

7  discussed in part II.C above, a "qualified written request" is

8  a request "for information relating to the servicing of

9  [federally regulated mortgage loans]." 12 U.S.C. §

10  2605(a)(1)(A). Plaintiff has not alleged that he requested such

11  information.

12      Plaintiff's RESPA claim is therefore dismissed without

13  prejudice.  If plaintiff may allege, consistent with Rule 11,

14  that his letter to BAC sought information regarding loan

15  servicing, or that CHL failed to disclose or inaccurately

16  disclosed particular information required by RESPA, plaintiff may

17  amend this claim.

18      **3.   Rosenthal Fair Debt Collection Practices Act**

19      California's Rosenthal Fair Debt Collection Practices Act

20  ─────────────

21  [19] Plaintiff argues that this allegation constructively
   identifies specific information that should have been disclosed,

22  because "the only disclosures mandated under RESPA at the time of
   closing[] are those pertaining to escrow costs." Amended Opp'n,

23  15. Of the two citations plaintiff provides in purported support
   of this argument, 12 U.S.C. § 2601 is a statement of purpose

24  containing no requirements, and 12 C.F.R. § 3500.2(b) is not a
   valid citation.

25  [20] Plaintiff also argues that CHL violated RESPA in this
   manner. However, plaintiff has not alleged that he requested any

26  information from CHL.

prohibits creditors and debt collectors from, among other things, making false, deceptive, or misleading representations in an effort to collect a debt.  Cal. Civ. Code § 1788, et seq.  A "debt collector" is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code § 1788.2(c); see also Izenberg v. ETS Services, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008).  Plaintiff allege that defendants CHL and BAC violated the Rosenthal Act by:

> threaten[ing] to take actions not permitted by law, including but not limited to: collecting on a debt not owed to [them], making false reports to credit reporting agencies, foreclosing upon a void security interest, foreclosing upon a Note of which they were not in possession nor otherwise entitled to payment, falsely stating the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect a debt.

FAC ¶ 72.  Among these allegations, the allegation that defendants "threatened to . . . us[e] unfair and unconscionable means in an attempt to collect a debt," without any indication as to what those means were, is plainly conclusory.

The allegations regarding foreclosure, while not necessarily conclusory, identify conduct that is not prohibited by the Rosenthal Act.  Foreclosure on a property as security on a debt is not debt collection activity encompassed by the Rosenthal Act. Cal. Civ. Code § 2924(b), Izenberg, 589 F. Supp. 2d at 1199; see also Yulaeva v. Greenpoint Mortgage Funding, No. 09-1504, 24-25,

1   2009 U.S. Dist. LEXIS 79094, *29-*30 (E.D. Cal. Sept. 3, 2009)

2   (Karlton, J) (discussing the Federal Fair Debt Collection

3   Practices Act, 15 U.S.C. § 1692 et seq.). Although plaintiff's

4   claim is formally based on the "threat" to foreclose rather than

5   foreclosure itself, the Rosenthal Act only prohibits threats when

6   the threatened conduct is also prohibited by the Rosenthal Act;

7   the Act does not prohibit a creditor from honestly representing

8   that he can and will foreclose.  Cal. Civ Code § 1788.13.[21]

9       Plaintiff then alleges that defendants threatened to "mak[e]

10  false reports to credit reporting agencies."  Although the

11  Rosenthal Act does not explicitly prohibit reporting false

12  information to a credit agency, the Act explicitly incorporates

13  federal law, Cal. Civ. Code § 1788.17, and the federal Fair Debt

14  Collection  Practices  Act  prohibits  "[c]ommunicating  or

15  threatening to communicate to any person credit information which

16  is known or which should be known to be false," 15 U.S.C. §

17  1692e(8).[22]  This allegation satisfies the general requirements

18  of Rule 8, in that it identifies the circumstances, occurrences

19  and events of the challenged conduct.  Rule 9(b)'s heightened

20

21      [21] Cal. Civ. Code § 1788.10 enumerates the types of "threats"
    that are prohibited under the Rosenthal Act.  Section 1788.10(f)
22  prohibits "The threat to take any action against the debtor which
    is prohibited by this title."
23

        [22] While the court is unaware of any Rosenthal Act provision
24  prohibiting  communication  of  false  information  to  a  credit
    reporting agency, the Rosenthal Act does prohibit falsely stating
25  that information will be reported to a credit agency.  Cal. Civ.
    Code § 1788.13(f).  Plaintiff has not alleged that defendants made
26  or threatened to make such a false representation.

1 requirements do not apply to this theory of liability, in that
2 this theory does not "sound[] in fraud." <u>Kearns v. Ford Motor</u>
3 <u>Co.</u>, 567 F.3d 1120, 1125-26 (9th Cir. 2009). Plaintiff does not
4 allege that false representations were actually made and relied
5 upon, only that they were threatened. Accordingly, fraud is not
6 the "basis of [the] claim," and Fed. R. Civ. P. 9(b) does not
7 apply. <u>Vess</u>, 317 F.3d at 1103-04.

8 　　　Plaintiff further alleges that defendants threatened to
9 "increas[e] the amount of a debt by including amounts that are
10 not permitted by law or contract collecting on a debt not owed
11 to [them]." Section 1788.13(e) prohibits adding fees that may
12 not be lawfully added. This claim also provides the minimal
13 particularity required by Rule 8.

14 　　　Finally, plaintiff alleges that CHL and BAC "threatened to
15 . . . falsely stat[e] the amount of a debt." FAC ¶ 72. As to
16 this allegation, an alleged "threat" is nearly incoherent;
17 Plaintiff apparently means simply that CHL and BAC falsely stated
18 the debt. Because this allegation concerns particular false
19 representations, it sounds in fraud, and is subject to Rule
20 9(b)'s heightened requirements. Plaintiff has satisfied these
21 requirements, alleging that misrepresentations occurred in the
22 monthly statements sent to plaintiff, which were allegedly false
23 in that they stated overly high balances and corresponding
24 monthly obligations. Although plaintiff has not distinguished
25 CHL and BAC's particular roles in these representations, this
26 omission is excusable. Plaintiff's monthly statements are sent

43

1  by "Countrywide Home Loans."  At this stage of litigation,

2  plaintiff may not be able to allege whether the statements are

3  sent by BAC, which was formerly known as "Countrywide Home Loans

4  Servicing," or by CHL, i.e., "Countrywide Home Loans, Inc."  No

5  such allegation is required.

6       Accordingly, some, but not all, of plaintiff's theories of

7  liability under the Rosenthal Act are sufficiently alleged.

8  Defendants' motion is granted in part and denied in part as to

9  plaintiff's Rosenthal Act claim.

10      **4.   Breach of Fiduciary Duty**

11       Plaintiff brings a claim for breach of fiduciary duty

12  against defendants Ron Allen & Associates Real Estate, Ronnie D.

13  Allen, and CHL.  The former two defendants are not directly at

14  issue in this motion.  The court dismisses this claim as to CHL,

15  because plaintiff has not alleged facts supporting the conclusion

16  that CHL owed plaintiff a fiduciary duty, nor has plaintiff

17  provided a legal theory under which CHL may be liable under the

18  brokers' fiduciary duties.

19       In general, a lender does not owe a fiduciary duty to a

20  borrower.  "A commercial lender is entitled to pursue its own

21  economic interests in a loan transaction. This right is

22  inconsistent with the obligations of a fiduciary which require

23  that the fiduciary knowingly agree to subordinate its interests

24  to act on behalf of and for the benefit of another." Nymark v.

25  Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089, 1093 n.1

26  (1991). "[A]bsent special circumstances . . . a loan transaction

44

is at arm's length and there is no fiduciary relationship between the borrower and lender."   Oaks Management Corporation v. Superior Court, 145 Cal. App. 4th 453, 466 (2006) (collecting cases).

Plaintiff argues that because of CHL's influence upon plaintiff's brokers, Ron Allen & Associates Real Estate and Ronnie D. Allen, CHL is subject to the fiduciary duty a broker owes to the client.   CHL's influence allegedly consisted of commissions paid to the brokers based on the volume and profitability (for CHL) of the loans brokers sold, as well as "train[ing], direct[ion], [and] authoriz[ation]," although plaintiff has not explained the sense in which CHL directed or authorized the broker's conduct.   FAC ¶¶ 22, 35, 92.   The case relied upon by plaintiff, Wyatt v. Union Mortg. Co., held that "*[d]irectors and officers of a corporation . . . may become liable [for a corporation's torts] if they directly ordered, authorized or participated in the tortious conduct.*"   Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 785 (1979) (emphasis added). Neither Wyatt nor the authorities cited therein suggests that this rule imposes liability outside the relationship between a corporation and its officers.

Plaintiff also argues that CHL may be vicariously liable under employer/employee, agency, and conspiracy theories.[23]   The

---

[23] Because the court concludes that each of these theories fails, the court does not address the relationship between these theories and the reasoning in Wyatt.   See Doctors' Co. v. Superior Court, 49 Cal. 3d 39, 48 (1989) (citing Wyatt v. Union Mortgage

factual allegations do not support employee or agency theories. As to master/servant relationships, the "primary factor" in whether the purported employer exercises control over the purported employee. See Metropolitan Water Dist. v. Superior Court, 32 Cal. 4th 491, 512 (2004) (following the Restatement Second of Agency (1958), § 220). Plaintiff has not alleged facts indicating that CHL exercised the requisite control over the brokers' activities. Other factors courts may consider in this analysis are not relevant here. See Tieberg v. Unemployment Ins. Appeals Board, 2 Cal. 3d 943, 950 (1970) (quoting Restatement of Agency, Second § 220(2)(b)-(j)).

As to agency, an agency relationship exists where a principal authorizes an agent to represent and bind the principal. Cal. Civ. Code § 2295. Here, although plaintiff has alleged that CHL offered the brokers incentives to act in ways that furthered CHL's interests, there is no allegation indicating that the CHL gave the brokers authority to represent or bind CHL, or that CHL took some action that would have given plaintiff the impression that such a relationship existed. Cal. Civ. Code §§ 2299, 2300; J.L. v. Children's Institute, Inc., 177 Cal. App. 4th 388, 403-404 (2009). Therefore, plaintiff's allegations do not support a finding of either actual or ostensible agency.

Turning finally to conspiracy, CHL may not be liable for

Co., 24 Cal. 3d at 785).

46

conspiracy to breach a fiduciary duty.  Under California law, a party may be vicariously liable for another's tort in a civil conspiracy where the plaintiff shows "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." Rusheen v. Cohen, 37 Cal. 4th 1048, 1062 (2006) (citing Doctors' Co. v. Superior Court, 49 Cal.3d 39, 44 (1989)), see also Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994).[24]  The California Supreme Court has held that even when these elements are shown, however, a conspirator cannot be liable unless he personally owed the duty that was breached.  Applied Equipment, 7 Cal. 4th at 511, 514.  Civil conspiracy "cannot create a duty . . . . [i]t allows tort recovery only against a party who already owes the duty." Id. at 511.  Allied Equipment has thus sharply limited the scope of civil conspiracy liability. Numerous California cases have cited Applied Equipment to limit civil conspiracy liability, and this court is aware of only two post-Applied Equipment cases imposing civil conspiracy liability. Kesmodel v. Rand, 119 Cal. App. 4th 1128, 1133, 1141 (2004), Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, 107 Cal. App. 4th 54, 84 (2003).  These cases involved generally-applicable tort duties, respectively, the duty not to falsely

---

[24] Rusheen stated in passing that these were "The elements of an action for civil conspiracy." 37 Cal. 4th at 1062.  In cases more directly considering civil conspiracy liability, however, the California Supreme Court has explained that "Conspiracy is not a cause of action." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510 (1994).

1  arrest, and the duty not to engage in affirmative fraud.   In

2  contrast, courts have specifically held that civil conspiracy

3  cannot impose liability for breach of fiduciary duty on a party

4  that does not already owe such a duty.   <u>Everest Investors 8 v.</u>

5  <u>Whitehall Real Estate Ltd. Partnership XI</u>, 100 Cal. App. 4th

6  1102, 1107 (2002) (citing <u>Doctors' Co.</u>, 49 Cal. 3d at 41-42, 44

7  and <u>Allied Equipment</u>, 7 Cal. 4th at 510-512).   Thus, civil

8  conspiracy allows imposition of vicarious liability on a party

9  who owes a tort duty, but who did not personally breach that

10 duty.   <u>Doctors' Co.</u>, 49 Cal. 3d at 44 (A party may be liable

11 "irrespective of whether or not he was a direct actor and

12 regardless of the degree of his activity."); <u>see also</u> <u>Kesmodel</u>,

13 119 Cal. App. 4th at 1141 (illustrating application of this

14 rule).

15      The California Supreme Court's holdings appears to compel

16 the conclusion that in this case, where CHL is alleged to have

17 induced another, the broker, to engage in a joint scheme that

18 will breach the broker's fiduciary duty, CHL may not be liable

19 under an independent civil conspiracy claim nor under a claim for

20 civil conspiracy to commit breach of fiduciary duty.   <u>Applied</u>

21 <u>Equipment</u>, 7 Cal. 4th at 511, 514.   Whatever the wisdom of this

22 rule, the court is bound by the California Supreme Court's

23 holdings on this issue.   It may be that CHL is liable, on some

24 other theory, for interfering with the fiduciary duty owed to

25 plaintiff by plaintiff's mortgage brokers.   The court declines

26 to speculate on what such a claim would entail, or its likelihood

48

1    of success.   Associated General Contractors of California, 459

2    U.S. at 526.    In the present complaint, the purported

3    interference identified by plaintiff is insufficient to give rise

4    to a fiduciary duty running from the lender to the borrower.

5    Oaks Management, 145 Cal. App. 4th at 466.  Absent such a duty,

6    plaintiff's claim for breach of fiduciary duty must be dismissed

7    as to CHL.

8        **5.   Fraud**

9        Plaintiff brings a claim for fraud as to all defendants.

10   The elements of a claim for intentional misrepresentation under

11   California law are (1) misrepresentation (a false representation,

12   concealment or nondisclosure), (2) knowledge of falsity, (3)

13   intent to defraud (to induce reliance), (4) justifiable reliance,

14   and (5) resulting damage.   Agosta v. Astor, 120 Cal. App. 4th

15   596, 603 (2004).  Claims for fraud are subject to a heightened

16   pleading requirement under Fed. R. Civ. P. 9(b), as discussed

17   above.

18       The FAC's allegations in support of the claim for fraud are

19   that:

20           Defendants, and each of them, have made
             several representations to Plaintiff with
21           regard to material facts. [¶] These material
             representations made by Defendants were
22           false. [¶] Defendants knew that these
             material representations were false when
23           made, or these material representations were
             made with reckless disregard for the truth.
24           [¶] Defendants intended that Plaintiff rely
             on these material representations. [¶]
25           Plaintiff reasonably relied on said
             representations. [¶] As a result of
26           Plaintiff['s] reliance, he was harmed and
             suffered damages.

                                49

1   FAC ¶¶ 102-105.   These allegations are simply conclusory, and

2   they fail to meet the specificity required by Fed. R. Civ. P.

3   9(b).   They refer to no specific conduct, and give defendants

4   absolutely no indication as to what fraud underlies the fraud

5   claims.

6        Without attempting to defend the general allegations quoted

7   above, plaintiff contends that the claim nonetheless satisfies

8   Rule 9(b) because it incorporates by reference all other

9   allegations in the complaint.   The FAC is twenty five pages long,

10  consists of 140 numbered paragraphs, and, as noted above,

11  contains allegations relating to eight separate defendants.

12  Moreover, none of these allegations specifically identify any

13  misrepresentation by the parties to this motion.   Plaintiff's

14  shotgun incorporation of allegations by reference fails to

15  provide the notice required by Rule 9, and plaintiff's fraud

16  claim is dismissed.

17       Plaintiff's opposition memorandum purports to identify

18  various particular allegations sufficient to support a claim for

19  fraud.   Because defendant has responded to these arguments, the

20  court discusses whether amending the complaint to indicate that

21  the fraud claim is predicated on these allegations would be

22  futile.

23       Many of the representations highlighted by plaintiff in his

24  opposition were made by Jake Weathers, who is no longer a

25  defendant in this suit, and by defendants Ron Allen & Associates

26  Real Estate and Ronald D. Allen, who are not parties to this

1  motion.  For example, plaintiff argues that he was "fraudulently

2  induced . . . by Defendants RAARE, Allen and Weathers," Opp'n at

3  18-19 (citing FAC ¶¶ 22-25), and specifically that Weathers

4  promised that plaintiff would be able to refinance his loan, FAC

5  ¶ 28.  <u>Allied Equipment</u> does not preclude holding CHL vicariously

6  liable in a claim for civil conspiracy to commit this fraud,

7  because the duty not to engage in affirmative fraud, unlike a

8  fiduciary duty, is owed generally.  <u>Shafer</u>, 107 Cal. App. 4th at

9  84.  Because the parties have not further discussed this issue,

10  the court's discussion stops here.

11       Plaintiff    also    argues    that    MERS    and    ReconTrust

12  misrepresented their interests in the property when initiating

13  foreclosure   proceedings   by   representing   that   MERS   was   a

14  beneficiary   under   the   deed   of   trust.    This   theory   is   not

15  supported by any allegations in the FAC--i.e., the FAC does not

16  allege that MERS represented that it was a beneficiary while

17  knowing that it was not.   More importantly, the FAC does not

18  contain allegations that would render plausible the argument

19  that,  notwithstanding   the  fact   that  MERS   is  listed   as  a

20  beneficiary on the deed of trust and that no assignment has been

21  recorded, MERS is not the beneficiary.

22       Plaintiff's remaining arguments amount to the claim that

23  "the entire scheme of selling and transferring notes and deeds

24  . . . was fraudulent."  Opp'n, 19.  Even if, as plaintiff argues,

25  this   scheme   is   wrongful,   plaintiff   must   explain   how   this

26  wrongfulness sounds in fraud and results in damages to plaintiff,

1   as contrasted with society as a whole.

2       Plaintiff has not identified further particular

3   representations underlying the fraud claim.[25]   Accordingly,

4   defendants' motion to dismiss the fraud claim is granted as to

5   defendants CHL, BAC, MERS, and ReconTrust.   Although the

6   complaint now before the court is without merit in this regard,

7   the court cannot say that a more carefully crafted complaint

8   might not state a cause of action.   Accordingly, the dismissal

9   will be without prejudice.   Plaintiff is warned, however, that

10  an amended complaint drafted with the same lack of merit as the

11  instant one will result in appropriate sanctions.

12      **6.   Negligence**

13      Plaintiff's claim for negligence is brought as to all

14  defendants.   Under California law, the elements of a claim for

15  negligence are "(a) a legal duty to use due care; (b) a breach

16  of such legal duty; and (c) the breach as the proximate or legal

17  cause of the resulting injury."   <u>Ladd v. County of San Mateo</u>, 12

18  Cal. 4th 913, 917 (1996) (internal citations and quotations

19  omitted); <u>see also</u> Cal Civ Code § 1714(a).   Moving defendants

20  argue that plaintiff has not adequately alleged facts supporting

21  any of these elements.   The court discusses the allegations of

22  negligence as to each defendant separately.[26]

23  ───────────

24      [25] Plaintiff has not argued that his fraud claim is or may be
    predicated on a failure to make statutorily required disclosures.

25

26      [26] Plaintiff's negligence claim contains only two factual
    allegations, that "defendants" "failed to maintain the original
    Mortgage Note, failed to properly create original documents, and

1        **a.    CHL**

2            **i.    Lenders' Duty of Care to Borrowers**

3        The court rejects defendants' argument that a lender never

4    owes a duty of care to borrowers.  California courts have stated

5    that "as a general rule, a financial institution owes no duty of

6    care to a borrower when the institution's involvement in the loan

7    transaction does not exceed the scope of its conventional role

8    as a mere lender of money."  <u>Nymark</u>, 231 Cal. App. 3d at 1096.

9    Applying this rule, the court in <u>Nymark</u> granted summary judgment

10   to defendant on a claim that the defendant lender had acted

11   negligently in appraising the borrower's collateral to determine

12   if it is adequate security for a loan refinancing the borrower's

13   mortgage, as the court concluded as a matter of law that no duty

14   of care existed with respect to the appraisal.  <u>Id.</u> at 1096.  <u>See</u>

15   <u>also</u> <u>Wagner v. Benson</u>, 101 Cal. App. 3d 27, 35 (1980) (a lender

16   has no duty to ensure that borrower will use borrowed money

17   wisely).

18       The court understands <u>Nymark</u> to be limited in two ways.

19   First, a lender may owe to a borrower a duty of care sounding in

20   negligence when the lender's activities exceed those of a

21   _____

22   failed to make the required disclosures to the Plaintiff," and
     "took payments to which they were not entitled, charged fees they
23   were not entitled to charge, and made or otherwise authorized
     negative reporting of Plaintiff creditworthiness to various credit
24   bureaus wrongfully."  FAC ¶ 79-80.  As with plaintiff's fraud
     claim, plaintiff relies on allegations incorporated by reference
25   to provide details to these allegations.  Because the negligence
     claim provides at least some indication as to its basis, the court
26   does not dismiss the claim on this ground alone.  Plaintiff is
     cautioned, however, against future reliance on this mode of
     pleading.

1   conventional lender.  The Nymark court noted that the "complaint

2   does not allege, nor does anything in the summary judgment papers

3   indicate, that the appraisal was intended to induce plaintiff to

4   enter  into  the  loan  transaction  or  to  assure  him  that  his

5   collateral was sound."[27]  Id. at 1096-97.  Nymark thereby implied

6   that had such an intent been present, the lender may have had a

7   duty to exercise due care in preparing the appraisal.  See also

8   Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) ("Liability to

9   a borrower for negligence arises only when the lender actively

10  participates in the financed enterprise beyond the domain of the

11  usual money lender.").

12      Second, even when a lender's acts are confined to their

13  traditional  scope,  Nymark  announced  only  a  "general"  rule.

14  Rather than conclude that no duty existed per se, the Nymark

15  court determined whether a duty existed on the facts of that case

16  by applying the six-factor test established by the California

17  Supreme Court in Biakanja v. Irving 49 Cal. 2d 647, 320 P.2d 16

18

19      [27] The court notes that in Nymark, the loan was being taken to
    refinance a mortgage.  In this scenario, a borrower may have less
20  need to know the value of the property.  The home has already been
    bought, and if the lender attempts to enforce the security through
21  a non-judicial foreclosure, the lender may not seek a deficiency
    judgment against the borrower.  Alliance Mortgage Co. v. Rothwell,
22  10  Cal.  4th  1226,  1236 (1995)  (citing  Roseleaf  Corp.  v.
    Chierighino, 59 Cal. 2d 35, 43-44 (1963)).  Even in this situation,
23  however, the borrower has an interest in the value of the home, at
    least because the lender may seek a deficiency judgment after a
    judicial foreclosure.  Id.
24      In the context of a purchase money loan, the borrower has a
    much clearer interest in the appraisal, and the instant court
25  doubts that Nymark could be extended to such a case.  In this case,
    however,  there  is  no  dispute  regarding  the  accuracy  of  the
26  appraisal.  The court instead discusses Nymark for its general
    holdings.

1  (1958).  Nymark, 231 Cal. App. 3d at 1098; see also Glenn K.

2  Jackson Inc. v. Roe, 273 F.3d 1192, 1197 (9th Cir. 2001).  This

3  test balances six non-exhaustive factors:

> [1] the extent to which the transaction was
> intended to affect the plaintiff, [2] the
> foreseeability of harm to him, [3] the
> degree of certainty that the plaintiff
> suffered injury, [4] the closeness of the
> connection between the defendant's conduct
> and the injury suffered, [5] the moral blame
> attached to the defendant's conduct, and [6]
> the policy of preventing future harm.

9  Roe, 273 F.3d at 1197 (quoting Biakanja, 49 Cal. 2d at 650)

10 (modification in Roe).  Although Biakanja stated that this test

11 determines "whether in a specific case the defendant will be held

12 liable to a third person not in privity" with the defendant, 49

13 Cal. 2d. at 650, Nymark held that this test also determines

14 "whether a financial institution owes a duty of care to a

15 borrower-client," 231 Cal. App. 3d at 1098.  Applying these

16 factors to the specific facts in that case, the Nymark court

17 assumed that plaintiff suffered injury, but held that the

18 remaining factors all indicated against finding a duty of care.

19 Id. at 1098-1100.

20    In Roe, the Ninth Circuit noted that the California Supreme

21 Court "arguably limited" Biakanja in Bily v. Arthur Young & Co.,

22 3 Cal. 4th 370, (1992), which held a court must consider three

23 additional factors before imposing a duty of care.  Roe, 273 F.3d

24 at 1198.  Roe summarized these factors as "(1) liability may in

25 particular cases be out of proportion to fault; (2) parties

26 should be encouraged to rely on their own ability to protect

1  themselves through their own prudence, diligence and contracting

2  power; and (3) the potential adverse impact on the class of

3  defendants upon whom the duty is imposed." Id. (citing Bily, 3

4  Cal. 4th at 399-405). Bily was decided before Nymark, but not

5  discussed therein.

### ii.  CHL's Allegedly Negligent Acts

7     Both limitations to the Nymark rule require the court to

8  consider the particular conduct underlying the negligence claim.

9  Plaintiff alleges three types of conduct here. Although the

10 court engages in this fact-specific analysis, the court is

11 mindful of fact that plaintiff has not provided a single example

12 of a case in which a lender was found to owe a duty of care

13 sounding in negligence to a borrower, nor has the court

14 discovered any such authority under California law.

15    First, plaintiff argues that CHL was negligent in failing

16 to provide the disclosures required by TILA and RESPA. FAC ¶¶

17 62, 79, 86. As explained above, plaintiff has not adequately

18 alleged a failure to provide any disclosure required by RESPA.

19 Plaintiff has alleged plausible failures to provide disclosures

20 required by TILA. CHL had a duty of care with regard to these

21 disclosures. Although the disclosures are undoubtedly within the

22 scope of a lender's normal activities, each of the Biakanja

23 factors support finding a duty of care, and the policy concerns

24 identified in Bily are inapplicable here. Plaintiff has

25 adequately alleged a duty to make accurate disclosures, a breach

26

1   of that duty, and damages.[28]

2        Second, plaintiff argues that CHL was negligent in

3   "directing [plaintiff] into a loan transaction that [he] may not

4   have otherwise qualified for by industry standards, resulting in

5   excessive fees paid by the Plaintiff and payments in excess of

6   Plaintiff['s] ability to pay." FAC ¶ 78. The California Court

7   of Appeal has directly spoken to this issue, holding that a

8   lender "owes no duty of care to the [borrower] in approving [a]

9   loan." Wagner, 101 Cal. App. 3d at 35. Wagner held that as a

10  matter of law, the lender did not owe a duty in negligence not

11  to place borrowers in a loan even where there was a foreseeable

12  risk borrowers would be unable to repay. Id. Wagner's

13  conclusion is consistent with the principles described above.

14  Approving and providing a loan is within the scope of activities

15  conventionally performed by a lender. Under Bily's second

16  factor, borrowers "should be encouraged to rely on their own

17  ability to protect themselves through their own prudence,

18  diligence and contracting power." Roe, 273 F.3d at 1198 (citing

19  Bily, 3 Cal. 4th at 399-405). While borrowers' ability to

20  protect themselves may depend on access to accurate information,

21  a lender's duty to provide that information is distinct from a

22  duty that would prohibit the lender from offering the loan at

23  all.

24        From the conclusion that a lender does not owe a duty to the

25  _____

26        [28] Defendants have not addressed whether this claim is
    preempted and the court expresses no opinion on that question.

57

borrower in approving the loan it follows that the lender's failure to discover that the loan application inaccurately stated the borrower's income, without more, cannot breach a duty owed to the borrower in negligence.  Here, plaintiff has alleged no consequence arising from the alleged failure.

Plaintiff finally alleges that CHL was negligent in failing to maintain the original promissory note and in "failing to properly create original documents."  FAC ¶ 79.  Other than the allegations regarding disclosures, plaintiff has not identified any defect in the promissory note, deed of trust, or attached documents.  As to preservation of the original promissory note, plaintiff has not alleged facts supporting the conclusion that any failure to maintain this note caused any harm to plaintiff.

**b.   BAC**

Plaintiff's sole allegation supporting the claim for negligence as to BAC is that BAC was negligent in servicing the loan because the loan was "invalid," such that if BAC had exercised due care, BAC would not have attempted to collect payment under the loan.  Plaintiff has not provided facts or a legal theory supporting the conclusion that the loan was void ab initio.  The claim for negligence as to BAC is dismissed.

**c.   MERS**

With the possible exception of failure to maintain the original promissory note, plaintiff's negligence claim does not allege any conduct that plaintiff attributes to MERS.  FAC ¶¶ 79-80.  As explained above, plaintiff has not alleged facts

1  indicating that failure to maintain the note harmed plaintiff.

2          **d.   ReconTrust**

3      Similarly, of the acts that FAC alleges constituted

4  negligence, none are alleged to have been performed by

5  ReconTrust.  In opposing this motion, plaintiff separately argues

6  that ReconTrust was negligent in executing a trustee's sale that

7  was procedurally defective, and in issuing a second notice of

8  trustee's sale after rescission of the first sale without also

9  issuing a second notice of default.  As described above, a second

10  notice of default was not required.   As to the defective

11  trustee's sale, a trustee's actions in executing a non-judicial

12  foreclosure are privileged communications under Cal. Civ. Code

13  section 47, and as such will not support a tort claim other than

14  one for malicious prosecution.   Cal. Civ. Code §§ 47, 2924(d),

15  Kachlon v. Markowitz, 168 Cal. App. 4th 316, 333 (2008); see also

16  Bouyer v. Countrywide Bank, FSB, 2009 U.S. Dist. LEXIS 53940

17  (N.D. Cal. June 25, 2009).

18          **7.   Unfair Competition**

19      California's Unfair Competition Law, Cal. Bus. & Prof. Code

20  § 17200, ("UCL") proscribes "unlawful, unfair or fraudulent"

21  business acts and practices.   Plaintiff's sole allegation

22  specifying the conduct underlying the UCL claim is that

23  "Plaintiff is informed and believe that Defendants['] acts as

24  alleged herein constitute unlawful, unfair, and/or fraudulent

25  business practices, as defined in the California Business and

26  Professions Code § 17200 et seq."  FAC ¶ 110.

1    Thus, as with the fraud claim, plaintiff's UCL claim merely

2  conclusorily alleges the barest elements of an UCL claim, and

3  directs defendants to scour the remainder of the complaint to

4  determine which, if any, of the allegations incorporated by

5  reference provide the basis for this claim.  The FAC therefore

6  fails to provide notice of the basis for any claim arising out

7  of unfair or fraudulent business practices.[29]

8    Plaintiff's UCL claim must therefore proceed, if at all, on

9  the theory that defendants acted unlawfully.  As discussed above,

10  plaintiff has adequately alleged unlawful acts in that CHL

11  violated TILA, that CHL and BAC violated the Rosenthal Act, and

12  that CHL acted negligently.  These allegations identify predicate

13  acts supporting a UCL claim.

14    Plaintiff has also adequately alleged that MERS acted

15  unlawfully by failing to register as a foreign corporation as

16  required under Cal. Corp. Code § 2105(a).  Nothing in the FAC

17  indicates that this cursory allegation, made as part of

18  plaintiff's statement of the parties, identifies conduct that is

19  the basis for the UCL claim.  Although the court cannot dismiss

20  a complaint for mere unskillful pleading, the court also cannot

21  endorse an approach that would require defendants to scour the

22  complaint for every passing hint as to possible additional bases

23  for claims.  Plaintiff may amend his complaint to state this

24  _____

25    [29] Above, the court noted that plaintiff might, in an amended
complaint, argue that CHL is vicariously liable for affirmative
fraud by the brokers.  The court does not speculate as whether such
26  a claim may be brought under the UCL.

1  basis for his UCL claim, so that defendants may squarely answer

2  it or seek to have it dismissed.

3      Defendants' motion to dismiss is therefore granted in part.

4      **8.   Breach of Contract**

5      Plaintiff's claim for breach of contract is brought only as

6  to defendants Ronnie D. Allen and CHL.  A cause of action for

7  breach of contract includes four elements: that a contract exists

8  between the parties, that the plaintiff performed his contractual

9  duties or was excused from nonperformance, that the defendant

10 breached those contractual duties, and that plaintiff's damages

11 were a result of the breach.  Reichert v. General Ins. Co., 68

12 Cal. 2d 822, 830 (1968); First Commercial Mortgage Co. v. Reece,

13 89 Cal. App. 4th 731, 745 (2001).

14      In plaintiff's opposition, he specifies that the contract

15 underlying this claim, at least as it pertains to CHL, is the

16 promissory note itself. Opp'n 22-23.  Plaintiff alleges that CHL

17 breached this contract by refusing to permit plaintiff to

18 refinance.   However, plaintiff's allegation that the note

19 included a term promising plaintiff that he would be able to

20 refinance is refuted by the note itself.  Plaintiff also alleges

21 that CHL breached the contract by issuing monthly bills for

22 amounts in excess of what was identified in the contract.  The

23 exhibits do not refute this allegation.  Plaintiff has therefore

24 adequately alleged a breach.

25      In light of this allegation, the court cannot conclude that

26 plaintiff's conceded non-performance under the contract, FAC ¶

1  45, is inexcusable.  Accordingly, plaintiff's breach of contract

2  claim may proceed on this theory.

3        **9.    Breach of The Implied Covenant of Good Faith and Fair**

4              **Dealing**

5        Plaintiff brings a claim for breach of the implied covenant

6  of good faith and fair dealing as to all defendants.  Such a

7  claim is predicated upon the existence of an underlying contract.

8  Plaintiff has not alleged that BAC, MERS, or ReconTrust entered

9  into any contract with plaintiff, instead mistakenly arguing that

10  no contract is required.  The good faith claim is therefore

11  dismissed as to these defendants.

12        Plaintiff has alleged a contract with CHL.  Turning to CHL's

13  alleged breach of the implied covenant, as with many of

14  plaintiff's claims, the factual allegations underlying the good

15  faith claim are largely conclusory.[30]  These allegations do not

16  name individual defendants, plaintiff implicitly concedes that

17  many of the allegations regarding "defendants'" conduct are not

18  pertinent to CHL.

19        In his opposition, plaintiff argues that the good faith

20  claim is based on "CHL [having] placed Plaintiff into a toxic

21  loan with predatory terms."  However, because a claim for breach

22  of the duty of good faith is a claim that a defendant deprived

23

24        [30] For example, plaintiff alleges that defendants violated the
    duty of good faith by "performing the acts and failures to act
25  alleged herein, and by failing to perform the duties specifically
    enumerated herein," FAC ¶ 123, and by "failing to comply with all
26  applicable laws, including notice requirements, before
    foreclosure," FAC ¶ 124.

1  plaintiff of benefits reasonably expected by the parties under
2  the contract, entry into the contract itself cannot constitute
3  a violation of the duty of good faith.

4       Accordingly, plaintiff's claim for breach of the implied
5  covenant of good faith and fair dealing is dismissed as to all
6  moving defendants.

7       **10.  Wrongful Foreclosure**

8       Finally, plaintiff brings a claim for wrongful foreclosure,
9  as to BAC and ReconTrust.  Assuming without deciding that a claim
10 for wrongful foreclosure may be brought when foreclosure has not
11 yet occurred, plaintiff has failed to allege a violation of any
12 of the requirements for a non-judicial foreclosure.  As explained
13 above, defendants were not required to produce the promissory
14 note, identify the holder of the promissory note, or re-issue a
15 notice of default.  Accordingly, this claim is dismissed.

16 **C.  Motion to Strike**

17      Defendants summarily argue that plaintiff's requests for
18 punitive damages and for attorneys fees should be stricken.  As
19 to fees, defendants simply argue that because plaintiff's claims
20 should all be dismissed, plaintiff will be unable to recover
21 fees.  Because the court denies the motion to dismiss in part,
22 the factual predicate of this argument fails.  As to punitive
23 damages, defendants argue that all of plaintiff's allegations
24 regarding oppression, fraud, or malice are conclusory and should
25 be stricken under <u>Iqbal</u>, leaving the FAC without support for
26 punitive damages.  Mindful of the principle that motions to

strike are disfavored, the court finds plaintiff's allegations adequate.

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss, Doc. No. 29, is GRANTED IN PART.

The court DISMISSES the following claims:

1. Third Claim, for negligence, as to defendants BAC, MERS, and ReconTrust

2. Fourth Claim, under RESPA, as to CHL, BAC, MERS, and ReconTrust.

3. Fifth Claim, for breach of fiduciary duty, as to CHL.

4. Sixth Claim, for fraud, as to CHL, BAC, MERS, and ReconTrust.

5. Seventh Claim, under the UCL, as to defendants BAC, MERS, and ReconTrust

6. Ninth Claim, for breach of the implied covenant of good faith and fair dealing, as to CHL, BAC, MERS, and ReconTrust.

7. Tenth Claim, for wrongful foreclosure, as to CHL, BAC, MERS, and ReconTrust.

All dismissals are without prejudice. Plaintiff is granted thirty (30) days to file an amended complaint. It appears to the court that the plaintiff may truthfully amend to cure defects on some of his claims. However, plaintiff is cautioned not to re-plead insufficient claims, or to falsely plead.

The court DENIES defendants' motion as to the following

64

claims, insofar as they are premised on the theories found
adequate in the analysis above:

    1.   First Claim, for civil damages under TILA

    2.   Second Claim, under the Rosenthal Act

    3.   Third Claim, for negligence, as to CHL only

    4.   Seventh Claim, under the UCL, as to CHL and BAC

    6.   Eighth Claim, for breach of contract

Defendants' motion to strike, also presented in Doc. No. 29,
is DENIED.

IT IS SO ORDERED.

DATED:  October 22, 2009.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

65